189 N.J. Super. 201 (1983)
459 A.2d 710
STATE OF NEW JERSEY, PLAINTIFF,
v.
NEIL DE VINCENZO, DEFENDANT.
Superior Court of New Jersey, Law Division Hudson County.
Decided March 15, 1983.
*202 Thomas Brian Hanrahan, Assistant Prosecutor, for plaintiff (Harold J. Ruvoldt, Jr., Hudson County Prosecutor, attorney).
Kenneth P. Davie for defendant.
COBURN, J.S.C.
Defendant Neil DeVincenzo, now age 26, committed a crime for which he must be sentenced under the Code of Criminal Justice. The problem posed is whether, in the circumstances of this case, I may, despite his age, consider treating him as a young adult offender under N.J.S.A. 2C:43-5:
Any person who, at the time of sentencing, is less than 26 years of age and who has been convicted of a crime may be sentenced to an indeterminate term at the Youth Correctional Institution Complex.... [Emphasis supplied]
*203 The relevant facts are undisputed. Defendant pled guilty at age 25. In return for the plea, the prosecutor agreed to limit defendant's possible incarceration to an indeterminate term at the Youth Correctional Institution Complex. At the first sentencing date defendant was still less than 26 and unquestionably eligible for youthful offender treatment. Inadvertently, joint adjournment requests resulted in the participants appearing for entry of the judgment of conviction nine days after defendant's 26th birthday. On that occasion they and the court realized the legal problem created by the delay. Nevertheless, the prosecutor, with defendant's concurrence, justly asks that the plea agreement be honored. I will do so for the following reasons.
The abstract language of N.J.S.A. 2C:43-5, read literally, would bar a young adult offender sentence in this case. But that recognition in this context properly can serve only as the beginning, not the end, of analysis. Although the words used are ordinarily a reliable indicator of a statute's meaning, "[i]t is," observed Judge Learned Hand, "one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." Cabell v. Markham, 148 F.2d 737, 739 (2 Cir.1945). With varying turns of expression, the courts of New Jersey have consistently expressed the same view. E.g., Leitner v. Citizens Cas. Co., 135 N.J.L. 608, 611-612 (E. & A. 1947); State v. Spindel, 24 N.J. 395, 402-403 (1957); New Capitol Bar & Grill Corp. v. Employment Security Div., 25 N.J. 155, 160 (1957); Dvorkin v. Dover Tp., 29 N.J. 303, 313 (1959); State v. Gill, 47 N.J. 441, 444 (1966); J.C. Chap. Prop. Owner's Assoc. v. Jersey City Council, 55 N.J. 86, 100 (1969); Sandler v. Springfield Tp. Bd. of Adj., 113 N.J. Super. 333, 345 (App.Div. 1971).
When confronted with words whose literal application would cause absurd, anomalous or otherwise inconceivable results, the courts must always be prepared to ask whether the "instant case involves a situation which apparently escaped the attention of *204 the draftsman ... or at least was one where it was felt that the situation did not require an express statutory provision." Dvorkin v. Dover Tp., supra, 29 N.J. at 313. Former Chief Justice Weintraub similarly addressed the problem in New Capitol Bar & Grill Corp., supra:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.' [25 N.J. at 160]
In Valerius v. City of Newark, 84 N.J. 591, 598 (1980), the court observed, without dissent: "[w]e recognize that this interpretation is not found in a literal reading [of this statute]. However, it has been said that in some instances there is no surer way to misread a document than to read it literally." In this regard, before proceeding, it is worth recurring to another expression on statutory construction by Judge Hand:
We can best reach the meaning here, as always, by recourse to the underlying purpose, and, with that as a guide, by trying to project upon the specific occasion how we think persons actuated by such a purpose, would have dealt with it, if it had been presented to them at the time. To say that that is a hazardous process is indeed a truism, but we cannot escape it, once we abandon literal interpretation  a method far more unreliable. [Borella v. Borden Co., 145 F.2d 63, 64-65 (2 Cir.1944), aff'd 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945)]
See Guiseppi v. Walling, 144 F.2d 608, 624 (2 Cir.1944), aff'd sub nom. Gemsco v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945), cited with approval in Lloyd v. Vermeulen, 22 N.J. 200, 205 (1956).
In approaching an understanding of the purposes of this legislation, it is critically important to recognize that the Youth Complex is not an institution where age affects the right of detention. N.J.S.A. 2C:43-5 purports, at most, to restrict sentencing to those under the age of 26. Former Chief Justice (then Judge) Hughes took note of that many years ago in holding that a parole violator could be re-confined on an indeterminate sentence even though he was then five years over the *205 commitment age. In re Zienowicz, 12 N.J. Super. 563, 574 (Cty. Ct. 1951). Furthermore, the Commissioner of Institutions and Agencies may administratively transfer a defendant from the Youth Complex to State Prison for his "welfare, or that of other inmates, or for the security of the institution." N.J.S.A. 30:4-91.1. Consequently, a defendant's precise age at the time of commitment or sentencing cannot be said to be of great significance.[1] That is not to say that the age limit is to be casually disregarded; rather, it must be evaluated in relation to the circumstances presented and other relevant legal principles.
In State v. Pallitto, 107 N.J. Super. 96 (App.Div. 1969), the court dealt with the subject statute's predecessor which provided the additional limitation that the defendant had to be one "who has not been previously sentenced to State Prison." N.J.S.A. 30:4-147. The trial judge sentenced defendant to a term in State Prison, suspended execution of the sentence, and placed him on probation. On a violation of the terms of probation, the trial judge sentenced him as a youthful offender. The Appellate Division rejected defendant's contention that since he was originally "sentenced" to State Prison for the offense, he could not thereafter be given an indeterminate reformatory sentence. The court said:
We do not agree with that interpretation of the statute in its relation to the facts herein. The purpose of this legislation was to restrict commitments to a reformatory to those who had not been previously sentenced to and confined in State Prison, so that the institution's rehabilitative function as a "reformatory" would not be obstructed by the presence of former State Prison inmates of the recidivist type. [at 99 emphasis supplied.]
*206 Just as it was appropriate to add "and confined in State Prison" to the predecessor statute to carry out the Legislature's intent, so should a court, for the same purpose, add these words to the present statute: a defendant who becomes 26 between plea or verdict and the sentencing date, without any intervening misconduct on his part which delays entry of the judgment, may receive young adult offender treatment.
The interpretation I adopt is also in accord with the long followed practice of nunc pro tunc entries of judgment. In that regard it should be noted that some trial judges, at the time of plea or verdict, ask for the birthdate of a defendant who appears to be a candidate for the Youth Complex but may be nearing the age of 26. Had I done so I would not have kept the matter under advisement and permitted the adjournment requests to go beyond defendant's 26th birthday if satisfied that such a course would prejudice defendant's legal rights.
In McNamara v. N.Y., L.E. & W.R.R., 56 N.J.L. 56 (Sup.Ct. 1893), the court noted:
From the earliest times it has been the practice to allow judgments to be entered nunc pro tunc whenever the interest of justice so requires, and the delay in entering judgment has been due to the action of the court, saving the rights of third parties which have intervened. [at 58]
That principle remains unaltered. Atanasio v. Silverman, 1 N.J. 245, 250 (1949). No third-party rights are involved here, the delay in entering judgment was due to the court's action, and there can be no doubt but that justice requires the result reached.
This situation is also analagous to the circumstances of St. Vincent's Church v. Madison, 86 N.J.L. 567 (E. & A. 1914). There the statute provided that no writ of certiorari shall be allowed on a particular matter after a fixed period of time. The application for the writ was timely made but its allowance by the lower court appeared to have been beyond the time set in the statute. Chancellor Walker made these observations for a unanimous court:

*207 But, even if the allowance were made out of time, the objection would be invalid if the application were made within time, and for this reason: A justice of the Supreme Court has the constitutional right to deliberately consider all applications made to him, and it is not within the power of the legislature to limit this constitutional right so as to defeat the ends of justice, nor is there discoverable in the section mentioned any such legislative intention. If an application were made to a justice of the Supreme Court for the allowance of a certiorari on the last day on which it could be allowed, and, if the application presented a question of doubt and difficulty which it was necessary for the justice to take under advisement, and if, for that reason alone, or by reason of his other judicial engagements, it was impossible for him to decide for or against the allowance until a day later than the time limited for the allowance of the writ, still it could be lawfully allowed and issued. [at 569-570].
In criminal cases, but for the requirement of a presentence report, sentencing could occur at the time of plea or verdict. Thus, from that point, the matter of sentence ordinarily should be considered as "under advisement."
Although the courts of other states do not seem to have directly addressed the problem, it has been the subject of federal litigation under statutes similar to our own. The federal laws define the young offender by reference to his age at the "time of conviction" and further define "conviction" to mean "the judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere." 18 U.S.C.A. § 5006(g). Nonetheless, the federal courts have uniformly refused to read their statutes literally. In each case when the defendant pled or was adjudicated guilty before the age cut-off, and then became "overage" before sentencing, he was treated by the court as a youthful offender. United States v. Carter, 225 F. Supp. 566 (D.D.C. 1964); United States v. Kleinzahler, 306 F. Supp. 311 (E.D.N.Y. 1969); United States v. Branic, 495 F.2d 1066 (D.C. Cir.1974); Jenkins v. United States, 555 F.2d 1188 (4 Cir.1977).
In United States v. Carter, supra., Judge Youngdahl explained the wisdom of this approach in these terms:
The major purpose of the Youth Act is to provide the young defendant with treatment  namely, "corrective and preventive guidance and training designed to protect the public by correcting the antisocial tendencies" of such young defendant. 18 U.S.C. § 5006(g). Such treatment is thus for the benefit of both the defendant and the public at the same time. To withhold such benefit  from both the defendant and the public  merely because the defendant has turned *208 twenty-two by the time of sentence, although he was twenty-one at the time of a verdict or plea, is to make fortuitous circumstances determine an important substantive decision. For example, such reasoning would deny the benefits of the Youth Act to a defendant whose twenty-second birthday happened to fall during the Christmas holidays or during the recent period observing the funeral of the President of the United States  both of which were periods when the court was in recess. Furthermore, to adopt such an interpretation would require a judge who wanted to impose a sentence under the Youth Act to request from the Probation Office a speedy, and therefore incomplete, presentence report, or would force such judge to sentence without such a presentence report  both of which results are contrary to the wise policy of Rule 32, Fed.R.Crim.P., requiring as the usual procedure a full and complete presentence report. [225 F. Supp. at 568]
In the circumstances presented I am quite satisfied that it is within my authority to sentence defendant to an indeterminate term at the Youth Correctional Institution Complex under N.J.S.A. 2C:43-5.
NOTES
[1] In State v. Knight, 148 N.J. Super. 109, 111 (App.Div. 1977), the court, in describing the predecessor statute, did say that "defendant was 30 years old at sentencing and could not be sentenced to an indeterminate term at the Youth Correctional Institution Complex." But the statement is dictum, the context was different, and the court clearly was not intending to express a deliberate policy on this issue to be followed by the trial courts. Compare State v. Rush, 46 N.J. 399, 416 (1966), with In re Nicholson, 69 N.J. Super. 230, 235-236 (App.Div. 1961).