280 N.J. Super. 85 (1994)
654 A.2d 514
CONTINENTAL INSURANCE COMPANY, PLAINTIFF,
v.
ROBERT MILLER, KENNETH FULTON, UNION COUNTY PROSECUTOR'S OFFICE, TOWNSHIP OF UNION, TOWNSHIP OF UNION POLICE DEPARTMENT, JOA M. DASILVA, STATE FARM MUTUAL INSURANCE COMPANY, NEW JERSEY MANUFACTURERS INSURANCE COMPANY, TOWNSHIP OF CRANFORD, TOWNSHIP OF CRANFORD POLICE DEPARTMENT, CITY OF EAST ORANGE, CITY OF EAST ORANGE POLICE DEPARTMENT, CITY OF ELIZABETH, CITY OF ELIZABETH POLICE DEPARTMENT, TOWNSHIP OF HILLSIDE, TOWNSHIP OF HILLSIDE POLICE DEPARTMENT, TOWNSHIP OF IRVINGTON, TOWNSHIP OF IRVINGTON POLICE DEPARTMENT, CITY OF LINDEN, CITY OF LINDEN POLICE DEPARTMENT, CITY OF NEWARK, CITY OF NEWARK POLICE DEPARTMENT, THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, JOINT AUTO THEFT TASK FORCE, JOHN DOE (1-20), DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided October 14, 1994.
*86 Robert B. Rogers, for plaintiff (Hoagland, Longo, Moran, Dunst & Doukas, attorneys).
Alan R. Ackerman, for defendants Robert Miller and Kenneth Fulton.
Victor DiFrancesco, Jr., Assistant Union County Counsel, for defendant Union County Prosecutor's Office.
Raymond T. Sheldon, for defendant State Farm Mutual Insurance Company (William D. Surdovel, attorney).
William Gross, for defendant New Jersey Manufacturers Insurance Company (Connell, Foley & Geiser, attorneys).
Monica C. Kowalski, for defendant City of Elizabeth (La Corte, Bundy & Varady, attorneys).
Mondo V. Lee, for defendant City of Newark (Michelle Hollar-Gregory, Corporation Counsel, attorney).

OPINION
PISANSKY, J.S.C.
Defendants, Robert Miller and Kenneth Fulton, Union Township police officers, moved for summary judgment to dismiss plaintiff, Continental Insurance's ("Continental"), action for declaratory judgment in which Continental denies uninsured motorist (UM) coverage for the defendants. Further, defendants moved that the matter be arbitrated pursuant to the UM provision of the policy of automobile insurance between Union Township and Continental. Defendants also moved for attorney fees pursuant to N.J.S.A. 2A:15-59.1, the so-called frivolous litigation statute. Continental cross moved seeking summary judgment declaring *87 that the defendants are not entitled to UM coverage. Motions were also filed on behalf of defendants, Newark and Elizabeth, seeking a dismissal of Continental's complaint as to them with prejudice. Newark also moved for counsel fees.
The facts are as follows: On January 27, 1992, defendant officers Miller and Fulton were on duty working with a task force comprised of police officers from different cities in both Union and Essex Counties to combat auto theft in said counties. While the defendants, in an unmarked vehicle, were traveling west on 16th Avenue in Newark attempting to find a stolen white Toyota they had been chasing, the Toyota, travelling in the opposite direction, came at them, crossed over the center line and struck their vehicle head on. Following the incident, defendant Miller stated that from his impression the driver of the stolen vehicle "intentionally" struck their vehicle.
The issue is whether there is UM coverage for the defendants herein. More specifically, whether there is UM coverage for an insured who is involved in an incident with an uninsured motorist who intentionally used his vehicle to injure the insured; and, if so, whether there is still coverage even though the insured knew at the time of the incident that the act of the uninsured motorist was intentional. This is a case of first impression in New Jersey. There has been case law concerning UM coverage as to an insured injured by an intentional act of a tortfeasor, but those cases turned on whether the injuries arose out of the use of an uninsured motor vehicle in the accident and not, as in our case, where there is no question that an uninsured motor vehicle was used as the instrument that did the harm. See Sciascia v. American Ins. Co., 183 N.J. Super. 352, 443 A.2d 1118 (Law Div. 1982), aff'd o.b., 189 N.J. Super. 236, 459 A.2d 1198 (App.Div. 1983); Cerullo v. Allstate Ins. Co., 236 N.J. Super. 372, 378 n. 4, 565 A.2d 1125 (App.Div. 1989); Vasil v. Zullo, 238 N.J. Super. 572, 570 A.2d 464 (App.Div. 1990).
UM coverage is limited by statute to damages because of bodily injury, sickness or disease, including death resulting therefrom, *88 sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of an uninsured or hit and run motor vehicle. N.J.S.A. 17:28-1.1a. Therefore, the first question is to determine whether an "accident" as set forth in that statute has occurred.
The term "accident" is undefined in N.J.S.A. 17:28-1.1. The leading New Jersey case in discussing the term "accident", as it applies to UM coverage, is Sciascia, supra, 183 N.J. Super. 352, 443 A.2d 1118. In Sciascia, the insured decedent was a bystander shot by a passenger from a moving uninsured motor vehicle. Id. at 355, 443 A.2d 1118. The issue raised was whether the shooting could be considered an "accident," since it was deliberate from the perspective of the person firing the shotgun. The court noted that "decisional law in New Jersey defines an `accident' as an injury-causing event ... which is unforseen, unusual and unexpected.... Simply put, an accident is an unexpected, unintended happening." Ibid. (citations omitted).
But to what party should the event or happening be "unintended?" In the UM coverage context, is the event or happening considered from the tortfeasor's or insured's perception? To resolve these questions, it is necessary to distinguish UM coverage from liability coverage. UM coverage is first party coverage designed to compensate the injured insured. On the other hand, liability insurance coverage is to indemnify the insured for damages suffered by others as a result of the insured's tortious conduct. In cases involving liability, public policy mandates that an intentional tort is not an "accident" to prevent individuals from self-indemnification for their intentional wrongs. Malanga v. Manufacturing Cas. Ins. Co., 28 N.J. 220, 225, 146 A.2d 105 (1958). Therefore, in liability coverage cases, the matter is viewed from the standpoint of the tortfeasor. Contrarily, in Sciascia's analysis of UM coverage, the incident was viewed from the standpoint of the insured. As pointed out in Sciascia, New Jersey is a compulsory automobile insurance state, where all motorists must have liability insurance and insurance carriers must include *89 UM coverage as part of their liability insurance policy. N.J.S.A. 39:6A-3 and 17:28-1.1. Further, legislation as to automobile insurance coverage must be construed by our courts with "liberality in effecting the broadest protection of auto accident victims consistent with the language of the pertinent statute." Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 293, 330 A.2d 360 (1974). It must be assumed that the Legislature intended a reasonable approach for its statute to fulfill its purpose, and in construing a statute, the court should construe the same to effect such a reasonable approach. Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969). By the Sciascia court considering the incident from the insured's viewpoint, which this court agrees is a reasonable approach, it was consistent with the UM coverage statutory language and at the same time it satisfied the legislative purpose of providing the broadest protection to innocent automobile accident victims injured by uninsured motorists. 183 N.J. Super. at 357, 443 A.2d 1118. This approach by the Sciascia court is sound and this court wholeheartedly adopts the same herein.
The Sciascia court found that from the insured's viewpoint the shooting was an unintended, unexpected happening and therefore it held that the insured's death was caused by an "accident" within the terms of the UM policy coverage provided him. Id. at 357, 443 A.2d 1118. However, even though the court in Sciascia held the insured's death was an accident, it still concluded that the decedent was not entitled to recover UM benefits. Id. at 359, 443 A.2d 1118. UM coverage was denied by reason of the court's determination that the accident did not "arise out of the use" of an automobile. Id. at 358-59, 443 A.2d 1118. Further, see Cerullo v. Allstate Ins. Co., 236 N.J. Super. 372, 565 A.2d 1125 (App.Div. 1989), where the court also found no UM coverage since the injury suffered by the motorist was not an injury arising "out of the ownership, maintenance or use" of an uninsured vehicle. N.J.S.A. 17:28-1.1. For the same result, also see Vasil, supra, 238 N.J. Super. 572, 570 A.2d 464. The instant case differs from Sciascia, Cerullo and Vasil in that there is no question that defendants' *90 injuries arose out of the use of an uninsured automobile as an instrument that did the harm.
Defendants, Officers Miller and Fulton, were operating their car in furtherance of a joint task force combating auto theft. Their vehicle was intentionally struck head on by a stolen vehicle. In the police report of the incident, defendant Miller admitted that from his observation the driver of the stolen vehicle "intentionally" struck defendants' vehicle. Continental relies upon this admission to deny defendant police officers UM coverage. Continental contends that this incident was not an "accident" for the purposes of UM coverage, since defendant Miller admitted that from his viewpoint the stolen vehicle intentionally struck his. In other words, Continental wishes to impute the intention of the tortfeasor to the insured. Although New Jersey courts have not defined what is meant by the "viewpoint of the insured," other jurisdictions have shed some light on this issue. See Annotation, Coverage under Uninsured Motorist Clause of Injury Inflected Intentionally, 72 A.L.R.3d 1156, 1161 (1976) and cases cited therefrom, including Celina Mut. Ins. Co. v. Saylor, 301 N.E.2d 721 (Ohio C.P. 1973).
A discussion of the insured's viewpoint in the UM coverage context is found in Celina Mutual Ins. Co. v. Saylor, 301 N.E.2d 721 (Ohio C.P. 1973). In Celina, the court stated:
[In this case] we deal with the subject of uninsured motorists coverage. The [insured parties] have paid the insurance premiums and have consciously contracted with the [carrier] for protection. The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.
All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to [harm] herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from the risk of injury caused by an uninsured third person it is the court's belief that the provisions of the insurance policy must be construed most favorably from the insured's viewpoint.
[Id. at 723.]
*91 It follows that the viewpoint of the insured refers to his own perception as to his own acts as being intentional or not intentional and not to his perception that the actions of the uninsured are intentional. Any other approach would lead to an illogical conclusion. For example, in our case there are two insureds, Miller and Fulton, involved in an automobile accident with an uninsured motorist. One insured, Miller, recounts that the uninsured intended the accident, the other, Fulton, has no opinion as to how the accident occurred. To follow Continental's reasoning, Miller, who thought the tortfeasor acted intentionally, would not be covered while Fulton might have UM coverage. Such a conclusion would defy common sense, and no longer would an insured form the impression that an accident was caused by the intentional act of a tortfeasor.
Unfortunately, in today's society it has become commonplace for young car thieves to use stolen vehicles as an instrument to do harm to police who seek them out. Obviously, the police know they are vulnerable to these "accidents." It would be hard to imagine that this risk would not be contemplated by the insurer and the insured to be covered under a policy providing UM coverage. Sciascia, supra, 183 N.J. Super. at 359, 443 A.2d 1118. Simply stated, it would be unfair to allow Continental to deny coverage for an accident which the insured obviously bought insurance to cover.
In our case, it is uncontroverted that the defendant police officers were not acting intentionally when their vehicle was struck by the uninsured automobile. UM coverage, as required by statute, was designed for the protection of insured persons from uninsured motorists and should not be misconstrued in meaning for the benefit of the insured's UM carrier. Id. at 356, 443 A.2d 1118. Defendants, as victims of an intentional tort committed by an uninsured motorist in an accident where a motor vehicle was used as the instrument that did the harm, even though the insured *92 knew the act of the uninsured was intentional, are covered for their injuries under the UM provisions of Continental's policy.
Accordingly, defendants, Miller and Fulton's, motion for summary judgment to dismiss Continental's complaint is granted and this matter is ordered to arbitration. Counsel for defendants' motion for attorney's fees is hereby denied, as a legitimate legal issue was in dispute. Continental's cross motion for summary judgment is hereby denied for the reasons set forth in this opinion. The motions for defendants, Newark and Elizabeth, are granted. Their participation in the operation of the task force in no way obligated them to provide insurance coverage for personnel other than their own employees. Newark's request for counsel fees is denied.