716 A.2d 573 (1997)
315 N.J. Super. 78
James H. GREGORY, Plaintiff,
v.
ALLSTATE INSURANCE COMPANY, Defendant.
Superior Court of New Jersey, Law Division, Civil Action.
Decided March 7, 1997.
John J. Pisano, Cranford, for plaintiff.
James H. Gregory, Parsippany Frank Cofone, Jr., (D'Amico & Cofone, P.C.), New Brunswick, for defendants.
MENZA, J.S.C.
Defendant, Allstate Insurance Company, moves for reconsideration of this court's order of January 10, 1997, compelling it to *574 proceed to arbitration under the Uninsured Motorist provision of the plaintiff's policy.
The novel question presented in this case is whether Uninsured Motorist Coverage applies to an intentional assault in which the insured's automobile is the instrument of harm.
Plaintiff, an insured of the defendant, sustained injuries when the driver of an uninsured motor vehicle intentionally struck the rear of the plaintiff's vehicle.
The pertinent provision of Uninsured Motorist Statute provides:
No motor vehicle liability policy or renewal of such policy of insurance, including a liability policy for an automobile as defined in section 2 of P.L.1972, c. 70 (C. 39:6A-2), insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage in limits for bodily injury or death as follows:
All motor vehicle liability policies shall also include coverage for the payment of all or part of the sums which persons insured thereunder shall be legally entitled to recover as damages from owners or operators of uninsured motor vehicles, other than hit and run motor vehicles, because of injury to or destruction to the personal property of such insured ...

[N.J.S.A. 17:28-1.1 a.(2).]
Defendant, Allstate, contends that it is not obligated to provide uninsured motorist coverage to plaintiff, because plaintiff's injuries resulted from an intentional act and not from one caused by an accident. Allstate argues that because automobile liability insurance policies do not provide coverage to a tortfeasor who commits an intentional act, the victim of that act should not be legally entitled to recover damages for that intentional act under the uninsured motorist provision of his policy.
All of the New Jersey cases which have considered the issue of Uninsured Motorists Coverage for intentional acts have involved injuries caused by an instrumentality which was something other than an automobile. However, the precise question of whether injuries caused by an intentional assault with a motor vehicle is covered by uninsured motorist coverage, has not been decided by the New Jersey courts.
In Cerullo vs Allstate Ins. Co., 236 N.J.Super. 372, 565 A.2d 1125 (App.Div.1989), the court held that a motorist who sustained bodily injury as a result of being punched by an unidentified motorist, was not covered under uninsured motorist coverage of his policy, because his injury did not arise out of the ownership, maintenance or use of a vehicle as required by N.J.S.A. 17:28-1.1a.
The court stated:
... UM coverage is mandated as a substitute for the liability insurance which should have been covering the uninsured vehicle.
The coverage required by N.J.S.A. 17:28-1.1 protects any injured party who does not have recourse against an automobile insurance policy ... Automobile liability insurance would not provide coverage for an intentional criminal act, Allstate Ins. Co. v. Malec, 104 N.J. 1 [514 A.2d 832] (1986), because "all or virtually all" auto liability policies contain exclusions for intentionally caused harm ... thus, if UM coverage applies to injuries sustained through an intentional criminal attack effective through an instrumentality (in this case a fist) other than an automobile, then UM coverage, conceived as a first party substitute for third party liability coverage, would provide substantially greater protection than the third party coverage it replaces.
We do not suggest that UM and automobile liability coverage are perfectly symmetrical, but we perceive no legislative intent to establish UM coverage as a form of general crime insurance based on an indirect nexus between an automobile and the criminal act.

[Id. at 375-78, 565 A.2d 1125].
In a footnote, the court noted:
We do not decide whether UM coverage applies to an intentional assault in which *575 the uninsured automobile is the instrument of harm. Compare Leatherby Ins. Co. v. Willoughby, 315 So.2d 553 (Fla.Dist.Ct. of Appeal, 1975) and Nationwide Mut. Ins. Co. v. Roberts, 261 N.C. 285, 134 S.E.2d 654 (1964), which held that UM coverage applied to assault with an automobile, with McCarthy v. Motor Vehicle Accident Indemnification Corp., 16 A.D.2d 35, 224 N.Y.S.2d 909 (App.Div.1962), aff'd, 12 N.Y.2d 922, 188 N.E.2d 405, 238 N.Y.S.2d 101 (1963), which held that it did not. See generally, Annotation, Coverage Under Uninsured Motorist Clause of Injury Inflicted Intentionally. 72 A.L.R.3d 1161 (1976). Id.

In Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 649 A.2d 1272 (1994), the Supreme Court held that an insured pedestrian who was injured when an occupant of a passing car fired a gun shot at him, was entitled to PIP payments from his father's policy because the PIP statute provides coverage to persons "who sustained bodily injury ... as a pedestrian, caused by an automobile or by an object propelled by or from an automobile".
It then stated in dictum:
The guiding principle remains intact: to accommodate the public interest behind the Act, courts must favor the insured and find coverage if possible.
Illustrative of the application of that guiding principle is the broad meaning that courts have ascribed to the term "accident" as used in section four. In Pennsylvania National [v. Estate of Miller], supra, [185 N.J.Super. 183, 447 A.2d 1344 (1982)] the Appellate Division ruled that under PIP claims, "whether an event constitutes an `accident' must be determined from the perspective of the victim," 185 N.J.Super. at 188, 447 A.2d 1344, and therefore "accident" may, for PIP purposes, include the results of intentionally-inflicted injury. Id. at 187, 447 A.2d 1344. In that respect PIP coverage differs from both automobile-liability and uninsured-motorist coverage, neither of which applies to injuries caused by an act that is an accident from the victim's perspective but that is intended by the actor. As the court explained in Cerullo v. Allstate Insurance Co., 236 N.J.Super. 372, 565 A.2d 1125 (App.Div.1989), the differences between PIP and uninsured-motorist coverages are traceable to the significantly different needs that each coverage satisfies. See id. at 375-77, 565 A.2d 1125. (To the extent that Sciascia v. American Insurance Co., 183 N.J.Super. 352, 443 A.2d 1118 (Law Div.1982), aff'd. o .b., 189 N.J.Super. 236, 459 A.2d 1198 (App.Div.1983), on which defendant relies, rests on the notion that for uninsured-motorist-coverage questions courts must determine the issue of whether an accident occurred from the perspective of the covered victim rather than form that of the uninsured tortfeasor, that case is no longer respectable authority.)

[Id. at 249-50, 649 A.2d 1272.]
The Supreme Court was undoubtedly referring to the Cerullo case when it stated that uninsured motorists coverage does not apply to "injuries caused by an act which is an accident from the victim's perspective but that is intended by the actor." But the Cerullo case involved the question of coverage in a situation where one person caused injury to another by physically assaulting that person. It did not concern facts that involved an injury caused by an assault with an automobile, a situation which the Cerullo court specifically excluded from its decision. Similarly, the Supreme Court's rejection of the holding of Sciascia, that, in uninsured motorist cases, the determination of whether there was an accident must be determined from the victim's perspective and must be considered in the context of the facts of that case which concerned injuries caused in a drive by shooting.
The Uninsured Motorists statute clearly and unmistakenly provides that uninsured motorist coverage must be afforded to persons who sustain bodily injuries "arising out of the ownership, maintenance or use of a motor vehicle" who are "legally entitled to recover damages from ... operators of uninsured motor vehicles". N.J.S.A. 17:28-1.1 a(2).
In this case, the driver of the vehicle which struck the plaintiff was uninsured. The reason *576 why it was uninsured is irrelevant to the question of whether coverage applies.
There is a split of authority in jurisdictions which have considered the issue of whether the victim of an intentional automobile collision is covered by uninsured motorists coverage. See cases collected in Annotation, 72 A.L.R.3d. 1161 (1976), supra. The basis for each position is stated in that treatise as follows:
[I]n denying coverage the courts have reasoned that since an intentionally inflicted injury would not constitute an "accident" under a standard liability policy, it should not be deemed an "accident" under the statutory scheme, which is intended to place the injured person in the same position that he would have enjoyed had he been injured by someone covered by a standard liability policy. It should also, however, be pointed out that the same result, denial of coverage, has been reached in a case involving an uninsured motorist endorsement in a standard automobile liability policy.
On the other hand, it has been held in other jurisdictions that uninsured motorist coverage is applicable to injuries inflicted intentionally upon the insured by a person who, either in a general sense or by virtue of the intentionality of his act, was uninsured. In these cases, the courts reasoned, either expressly or by apparent implication, that the purpose of uninsured motorist coverage is to protect innocent victims who have been injured by financially irresponsible motorists, so that such coverage resembles an accident policy for the victim. Accordingly, the courts in these cases held that the question of whether or not an injury is accidental, and thus within the coverage of the policy, must be determined from the victim's standpoint, and that from this point of view the injury, although inflicted intentionally, fell within the protection afforded by the policy. Id. at 1164.
Considering the fact that the law clearly mandates a liberal interpretation of the no fault statute with the view to providing coverage to the victim of an accident, and taking into account the clear and plain language of the statute which provides coverage to persons "legally entitled to recover damages from operators of Uninsured Motor Vehicles", this court is compelled to conclude that the Uninsured Motorist Coverage must be afforded to victims of intentional automobile collisions.
Thus, the matter must proceed to arbitration in accordance with the policy.