784 A.2d 754 (2001)
345 N.J. Super. 241
Jennifer GRABOWSKI and Ronald Grabowski, Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2001.
Decided November 28, 2001.
*755 Kenneth G. Andres, Jr., Haddonfield, argued the cause for appellants (Andres & Berger, attorneys; Mr. Andres, of counsel and on the brief).
Lewis K. Jackson, argued the cause for respondent (Jackson & Dimeo, attorneys; Sean D. Cascio, on the brief).
Before Judges BRAITHWAITE, COBURN[1] and WEISSBARD.
The opinion of the court was delivered by WEISSBARD, J.A.D.
Plaintiff, Jennifer Grabowski, appeals from an order dismissing her verified complaint, which sought a declaration that she was entitled to uninsured motorist (UM) coverage under her automobile liability insurance policy with defendant Liberty Mutual Insurance Company (Liberty). We conclude that the facts brought plaintiff within her policy's UM coverage and reverse.
On November 18, 1997, plaintiff was injured in the course of a carjacking in Delran Township. After seeking unsuccessfully to have Liberty name an arbitrator under the UM provisions of her policy, plaintiff filed a verified complaint and order to show cause asking the court to declare that the UM coverage did apply and to compel Liberty to name an arbitrator and proceed with arbitration. The trial court ordered a plenary hearing for the purpose of determining what it perceived to be the critical issues: (1) whether plaintiff or the carjacker was the operator of the vehicle when plaintiff was injured; and (2) whether her injuries were caused by falling out of the vehicle or were the result of an intentional criminal act.
Following the hearing, at which plaintiff was the only witness, the court found that the carjacker "wanted [plaintiff] out of the car," and that, as a result of a struggle for control, plaintiff was forced out of the moving vehicle, resulting in her injuries. Nevertheless, the court concluded that although the carjacker intended to gain control of the vehicle, he did not intend to harm plaintiff; her injuries being simply a "natural consequence" of his effort to gain control.
In Longo v. Market Transition Facility, 326 N.J.Super. 316, 741 A.2d 149 (App.Div. 1999), we held that where an individual sustains injuries arising out of the operation of an otherwise insured vehicle under circumstances "amounting to theft or the like," id. at 321, 741 A.2d 149, the vehicle is rendered uninsured for the purpose of triggering the UM endorsement of the automobile's insurance policy. Longo involved injuries sustained by the plaintiff when her car was operated by an unknown person and crashed into another vehicle while plaintiff was asleep from intoxication in the passenger seat. The individual operating the car was never identified. Because the vehicle was being operated under circumstances amounting to theft, the liability provision of plaintiff's policy did not apply. As a result, even though the plaintiff owned and insured the vehicle, it fit within the definition of an uninsured motor vehicle as set forth in N.J.S.A. 17:28-1.1e(2). Id. at 321, 741 A.2d 149.
*756 We conclude that the reasoning of Longo applies in this case to render plaintiff's carjacked vehicle uninsured. Indeed, in dicta the Longo court gave the following as an example in support of its argument:
Almost weekly, our newspapers relate an event similar to the following: a woman entering her vehicle in a darkened parking lot is accosted by a stranger intent on stealing the vehicle. The thief pushes the woman into the vehicle and drives off with the victim as a passenger. The thief then crashes the vehicle into an object and runs from the scene, leaving the victim seriously injured. Could the Legislature possibly have intended the insured victim in such circumstances to be left without recourse? We think not.

[Id. at 322-23, 741 A.2d 149.]
We see no meaningful distinction between the situation in Longo and the present case on the applicability of the policy's owned vehicle exclusion in the definition of uninsured motor vehicle. This conclusion, however, is only the first step in the required analysis.
In accordance with N.J.S.A. 17:28-1.1a, the Liberty policy issued to plaintiff provided that UM coverage would be afforded for injury sustained by an insured in an "accident" that must arise out of the "ownership, maintenance or use" of the uninsured vehicle. Thus, we must first determine if plaintiff's injuries were the result of an accident.
In Sciascia v. American Insurance Co., 183 N.J.Super. 352, 356, 443 A.2d 1118 (Law Div.1982), aff'd, 189 N.J.Super. 236, 459 A.2d 1198 (App.Div.1983), we held that "the question of whether an accident occurred must be viewed from the insured's perspective." Sciascia was a UM case arising out of "the deliberate firing of a shotgun by a passenger in a then moving automobile of an uninsured owner-operator. One of these shots struck and killed the insured." Sciascia, supra, 183 N.J.Super. at 353, 443 A.2d 1118. However, in Lindstrom v. Hanover Insurance Co., 138 N.J. 242, 649 A.2d 1272 (1994), a case involving a claim for Personal Injury Protection (PIP) coverage resulting from a drive-by shooting, the Court also had to consider the meaning of the word accident, and concluded that when viewed from the insured victim's perspective, the shooting was an accident in that it was unintentional. Id. at 252-53, 649 A.2d 1272. In support of that approach, the Court cited with approval Pennsylvania National Mutual Casualty Insurance Co. v. Estate of Miller, 185 N.J.Super. 183, 187, 188, 447 A.2d 1344 (App.Div.1982), which had likewise held in the PIP context that, "whether an event constitutes an `accident' must be determined from the perspective of the victim," and therefore an "accident" for PIP purposes may include the results of intentionally inflicted injury. See Lindstrom, supra, 138 N.J. at 249, 649 A.2d 1272. However, after noting this court's opinion in Cerullo v. Allstate Insurance Co., 236 N.J.Super. 372, 565 A.2d 1125 (App.Div. 1989), which explained the differences in philosophy between PIP and UM coverages, the Court specifically disapproved, as no longer constituting respectable authority, the holding in Sciascia to the extent that it "rests on the notion that for uninsured-motorist-coverage questions, courts must determine the issue of whether an accident occurred from the perspective of the covered victim rather than from that of the uninsured tortfeasor." Id. at 249-50, 443 A.2d 1118.
Although the Court's statement concerning Sciascia could be viewed as dictum, since Lindstrom involved PIP coverage and Sciascia dealt with UM benefits, it was a clear and deliberate statement by our highest court which we feel obliged to *757 follow.[2]See State v. DeVincenzo, 189 N.J.Super. 201, 205 n. 1, 459 A.2d 710 (Law Div.1983).
Therefore, we must evaluate plaintiff's carjacking from the perspective of the carjacker, and determine from his viewpoint whether the injuries sustained by plaintiff were intentionally caused; if so, UM coverage is not available. In this regard, our task has been greatly simplified by the trial judge's factual determinations, set out at length above. The judge found that while the tortfeasor wanted to obtain control of plaintiff's vehicle and plaintiff was forced or fell out of the car as a result of that struggle for control, the tortfeasor did not intend to harm plaintiff or to cause the injuries that resulted from her fall. It is at this point that we part company with the trial judge who concluded that, because plaintiff's injuries resulted from the carjacker's intentional act in seeking to gain control of the car, there was no "accident" for UM purposes. We find, to the contrary, that because the carjacker did not intend to harm plaintiff, plaintiff's injuries resulted from an accident. This conclusion is consistent with the law developed in the context of liability coverage for acts said to come within policy exclusions for injury caused intentionally. In Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992), the Court held that "the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause injury." Id. at 183, 607 A.2d 1255. In making that determination, we look to "the actor's subjective intent to cause injury." Id. at 184, 607 A.2d 1255. Thus, "[i]t is the intent to injure, rather than the intent to commit the act that is important." Merrimack Mut. Fire v. Coppola, 299 N.J.Super. 219, 227, 690 A.2d 1059 (App.Div.1997) (citing S.L. Industries v. American Motorists, 128 N.J. 188, 207, 607 A.2d 1266 (1992)). As we have noted, the judge in this case specifically found that while the carjacker's actions were intentional, he did not intend to injure plaintiff.
Finally, we must still determine whether plaintiff's injuries arose out of the "use" of an automobile. The answer to that question is much simpler. Here, there was a "substantial nexus" between the automobile and the injuries. See Tornatore v. Selective Ins. Co., 302 N.J.Super. 244, 249-51, 253, 695 A.2d 313 (App.Div. 1997). This case is quite different from those where the instrumentality of the injury was something quite apart from the motor vehicle. See, e.g., Vasil v. Zullo, 238 *758 N.J.Super. 572, 570 A.2d 464 (App.Div. 1990) (knife); Cerullo v. Allstate Ins. Co., supra, (fist); Sciascia v. American Ins. Co., supra, (shotgun). In those cases there was no substantial connection between the insured's injury and the use of the uninsured automobile. In this case that connection, that nexus, was quite clear.
In summary, our conclusion is that the carjacker's taking control of plaintiff's vehicle rendered the vehicle uninsured for UM coverage purposes, that plaintiff's injuries were sustained in an accident, and that there was a sufficient nexus between the automobile and the injuries; all of which lead to the conclusion that Liberty's UM coverage was applicable in this case.
Reversed.
NOTES
[1] Judge Coburn did not originally participate in this case, but has, with the consent of counsel, been added to the panel deciding the matter.
[2] The position taken by Sciascia, and rejected by Lindstrom, appears to represent the prevailing view elsewhere. Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mitchell, 373 So.2d 1129, 1135 (Ala.App.1979); Gov't. Employees Ins. Co. v. Novak, 453 So.2d 1116, 1118 (Fla. 1984); Chapman v. Allstate Ins. Co., 263 S.C. 565, 211 S.E.2d 876, 879 (1975). See also Annotation, Coverage Under Uninsured Motorist Clause of Injury Inflicted Intentionally, 72 A.L.R.3d 1161 (1976). In Abraham v. Raso, 183 F.3d 279, 298 (3rd Cir.1999), the court, applying its view of New Jersey law, rejected Lindstrom in favor of the view expressed by Sciascia and the out-of-state cases cited above. Two lower court decisions also appear to run counter to Lindstrom and can no longer be accepted as authority. Gregory v. Allstate Insurance Co., 315 N.J.Super. 78, 716 A.2d 573 (Law Div.1997); Continental Insurance Co. v. Miller, 280 N.J.Super. 85, 654 A.2d 514 (Law Div.1994). We conclude that Gregory misread Lindstrom and did not properly focus on whether the plaintiff's injuries resulted from an "accident," but instead focused solely on the nexus between the injuries and the automobile. Continental, in which the court determined that UM coverage was available to police officers whose patrol car was deliberately struck by the driver of a stolen car, was decided before Lindstrom and could not have predicted its disapproval of Sciascia.