**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2707-17T3

JEFFREY A. WICHOT, an Adjudged
Incapacitated Person, by BARBARA
A. WICHOT and GREGORY P.
WICHOT, Court Appointed
Co-Guardians of the Person and
Property for JEFFREY A. WICHOT,

     Plaintiff-Appellant,

v.

ALLSTATE NEW JERSEY PROPERTY
& CASUALTY INSURANCE COMPANY,

     Defendant-Respondent,

v.

ALLSTATE NEW JERSEY PROPERTY
& CASUALTY INSURANCE COMPANY,

     Defendant/Third- Party Plaintiff,

v.

BRANDON T. BILLARD, THOMAS J.
RUBERTONE, JAMES RUBERTONE,
SHARON RUBERTONE, JARRED
TESCHNER, RONALD J. TESCHNER,

KELLY TESCHNER, CHEYENNE
CONA, and SHARON A. CONA,

      Third-Party Defendants.

_____

Argued March 18, 2019 – Decided April 3, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Law
Division, Passaic County, Docket No. L-0578-16.

Demetrios K. Stratis argued the cause for appellant
(Ruta, Soulios & Stratis, LLP, attorneys; Demetrios K.
Stratis, on the briefs).

Frederic J. Regenye argued the cause for respondent
(Law Office of Kenneth N. Lipstein, attorneys; Frederic
J. Regenye, of counsel and on the brief).

PER CURIAM

Jeffrey A. Wichot (plaintiff) appeals from a January 10, 2018 order

granting summary judgment in favor of Allstate New Jersey Property & Casualty

Insurance Company (defendant). We reverse and remand because there are

disputed issues of material fact.

Plaintiff was insured under an automobile liability insurance policy issued

by defendant, which provided plaintiff with uninsured motorist (UM) coverage.

It stated that if the insured and insurer do not agree on the insured's

right to receive damages or on the amount, then upon mutual consent, the disagreement will be settled by arbitration. . . . If the insured person and we do not agree to arbitrate, then the disagreement will be resolved in a court of competent jurisdiction. The arbitrators will not have the power to decide any dispute regarding the nature and amount of coverage provided by the policy or claims for damages outside the terms of the policy, including, but not limited to, claims for bad faith, fraud, misrepresentation, punitive or exemplary damages, attorney fees and/or interest.

On April 9, 2012, plaintiff was involved in an incident (the incident) wherein he sustained injuries for which he sought UM benefits from defendant. He was allegedly kidnapped by a friend and two other individuals, who held plaintiff at gunpoint and drove plaintiff in his own car to banks in order to withdraw money from his accounts. In the course of the incident, the three assailants repeatedly beat plaintiff, throwing him against the car and hitting him with the gun. The three assailants were not insured, so plaintiff notified defendant of his UM claim. Defendant rejected the claim, which necessitated the filing of this complaint. In the pleadings, the parties included a demand for trial by jury.

Defendant moved for summary judgment in July 2017. Although the parties had an arbitration proceeding scheduled, the judge made credibility

3

findings, findings of fact, and granted summary judgment in favor of defendant on January 10, 2018.

I.

N.J.S.A. 17:28-1.1(a)(2) provides that,

> no motor vehicle liability policy or renewal . . . insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, shall be issued in this State with respect to any motor vehicle registered or principally garaged in this State unless it includes coverage in limits for bodily injury or death as follows:
>
>   . . . .
>
> an amount or limit . . . for payment of all or part of the sums which the insured or his legal representative shall be legally entitled to recover as damages from the operator or owner of an uninsured motor vehicle, or hit and run motor vehicle . . . because of bodily injury, sickness or disease, including death resulting therefrom, sustained by the insured, caused by accident and arising out of the ownership, maintenance, operation[1] or use of such uninsured or hit and run motor vehicle[.]

N.J.S.A. 17:28-1.1(e)(2) defines an "uninsured motor vehicle" as

> (a) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is no

---

[1] The term "operator" is not defined in the UM statute, but in Title 39, the Legislature defined operator as "a person who is in actual physical control of a vehicle[.]" N.J.S.A. 39:1-1.

bodily injury liability insurance or bond applicable at the time of the accident;

(b) a motor vehicle with respect to the ownership, operation, maintenance, or use of which there is bodily injury liability insurance in existence but the liability insurer denies coverage or is unable to make payment with respect to the legal liability of its insured because the insurer has become insolvent or bankrupt, or the Commissioner of Banking and Insurance has undertaken control of the insurer for the purpose of liquidation;

(c) a hit and run motor vehicle . . . ; or

(d) an automobile covered by a special automobile insurance policy . . . .

"[A]n insured who seeks UM benefits must satisfy a two-prong test: first, the insured must demonstrate that his or her injuries were caused by an 'accident;' and, second, the insured must prove that the accident <u>arose from the ownership, maintenance, operation or use of an uninsured vehicle</u>." <u>Livsey v. Mercury Ins. Grp.</u>, 197 N.J. 522, 531 (2009) (emphasis added).[2]   "[P]olicies should be

---

[2] Ordinarily, "the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury." <u>Voorhees v. Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 183 (1992). In making that determination, we look to "the actor's subjective intent to cause injury." <u>Id.</u> at 184. Thus, "[i]t is the intent to injure, rather than the intent to commit the act that is important." <u>Merrimack Mut. Fire Ins. Co. v. Coppola</u>, 299 N.J. Super. 219, 227 (App. Div. 1997). On this record, the three assailants arguably intended to obtain money from plaintiff's bank accounts.

A-2707-17T3

construed liberally in [the insured's] favor to the end that coverage is afforded to the full extent that any fair interpretation will allow." Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001) (second alteration in original) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)).

"UM coverage requires an injury 'arising out of the ownership, maintenance, or use' of the uninsured vehicle." Cerullo v. Allstate Ins. Co., 236 N.J. Super. 372, 375 (App. Div. 1989). "Benefits are available only if the covered party . . . establishes that he is 'legally entitled to recover damages from the operator or owner' of the uninsured or hit and run vehicle." Ibid. UM coverage is mandated as "a substitute for the liability insurance which should have been covering the uninsured vehicle." Ibid. Where an individual sustains injuries arising out of the operation of an otherwise insured vehicle, "the operation of an insured vehicle under a factual scenario amounting to 'theft, or the like' permits an insurer to disclaim liability coverage . . . [and] renders the vehicle 'uninsured' within the meaning of the UM statute." Longo v. Market Transition Facility of New Jersey, 326 N.J. Super. 316, 321 (App. Div. 1999).

In Grabowski v. Liberty Mutual Insurance Co., 345 N.J. Super. 241, 243 (App. Div. 2001), the plaintiff was injured in the course of a carjacking when she was forced out of a moving vehicle. We stated that "we must evaluate [the]

6

plaintiff's carjacking from the perspective of the carjacker, and determine from his viewpoint whether the injuries sustained by plaintiff were intentionally caused; if so, UM coverage is not available." Id. at 246. Thus, we stated that "because the carjacker did not intend to harm plaintiff, plaintiff's injuries resulted from an accident." Ibid. We found this conclusion to be "consistent with the law developed in the context of liability coverage for acts said to come within policy exclusions for injury caused intentionally." Ibid.

We further discussed whether the plaintiff's injuries arose out of the "use" of an automobile, and determined that there was a "substantial nexus" between the automobile and the injuries. Id. at 247. Therefore, we concluded

> that the carjacker's taking control of [the] plaintiff's vehicle rendered the vehicle uninsured for UM coverage purposes, that [the] plaintiff's injuries were sustained in an accident, and that there was a sufficient nexus between the automobile and the injuries; all of which lead to the conclusion that [the defendant]'s UM coverage was applicable in this case.
>
> [Ibid.]

"[T]he [UM] statute was designed to provide maximum remedial protection to the innocent victims of financially irresponsible motorists and to reduce the drain on the financially-troubled Unsatisfied Claim and Judgment Fund." Riccio v. Prudential Prop. & Cas. Ins. Co., 108 N.J. 493, 503-04 (1987).

A-2707-17T3

"N.J.S.A. 17:28-1.1 must be construed liberally to foster the protection UM affords automobile accident victims."  Rider Ins. Co. v. First Trenton Cos., 354 N.J. Super. 491, 497-98 (App. Div. 2002).  "In construing a statute, the goal of the court is to ascertain the intent of the Legislature with reasonable certainty." Longo, 326 N.J. Super. at 323.

We discussed the role of UM coverage in a case in which the plaintiff was fatally stabbed by the occupants of an unknown vehicle, and stated,

> [i]f the perpetrators of the assault had been apprehended and the operation of the [unknown vehicle] was covered by insurance, the standard policy exclusion for "intentional acts" would have precluded [the] plaintiff from obtaining recovery from the insurer of the [unknown vehicle].  Since UM coverage is designed essentially as a substitute for the insurance coverage which the owner of an uninsured or hit and run vehicle would have been required to maintain, UM coverage does not extend to the homicide committed by one of the occupants of the [unknown vehicle].
>
> [Vasil v. Zullo, 238 N.J. Super. 572, 579 (App. Div. 1990).]

In Longo, we stated that,

> [a]lmost weekly, our newspapers relate an event similar to the following: a woman entering her vehicle in a darkened parking lot is accosted by a stranger intent on stealing the vehicle.  The thief pushes the woman into the vehicle and drives off with the victim as a passenger.  The thief then crashes the vehicle into an object and runs from the scene, leaving the victim

8

seriously injured. Could the Legislature possibly have intended the insured victim in such circumstances to be left without recourse? We think not.

[326 N.J. Super. at 322-23.]

In Shaw v. City of Jersey City, 174 N.J. 567, 578 (2002), our Supreme Court held that UM "coverage extends to injuries caused by the intentional acts of a tortfeasor[.]" In that case, the plaintiff was struck by the driver of a stolen vehicle. Id. at 570. The vehicle was insured, but the insurer declined coverage because the vehicle was stolen and the insured was not the driver when the incident occurred. Ibid. The plaintiff had UM coverage under his personal policy with his insurer. Ibid. The plaintiff's policy required that his insurer pay damages for "[b]odily injury sustained by an insured and caused by an accident[.]" Id. at 571. The Court concluded "that when [the] plaintiff was struck by the stolen [vehicle] an 'accident' occurred within the meaning of his [UM] policy." Id. at 578.

Here, in the judge's order granting summary judgment, he wrote that,

it was the gun which was the instrumentality of the kidnapping and robbery, and it was the gun, coupled with the threats against [p]laintiff's life and his concern for the safety of his family that caused any post-traumatic stress. There was no substantial nexus between the post-traumatic stress injury (the only injury alleged and claimed) and the vehicle to warrant [UM] benefit.

But extending coverage to insureds who sustain injuries during the course of an attack where there are injuries caused by an accident and the accident "arose from the ownership, maintenance, operation or use of an uninsured vehicle," Livsey, 197 N.J. at 531, would not violate the UM statute's legislative purpose or previous case law.

Giving plaintiff the benefit of all reasonable inferences, as we must at this stage, plaintiff was kidnapped by being placed in the vehicle and locked inside. The assailants then drove erratically and treacherously with plaintiff inside the vehicle. After removing plaintiff from the vehicle, the attackers threw plaintiff against the car. Finally, at the conclusion of the attack, the assailant who was driving crashed the car into a wall and it started to smoke. At that point, plaintiff was able to escape from the car and seek assistance. Without the automobile, this incident arguably never could have happened, and the three assailants could not have held plaintiff prisoner in the same fashion that they did.

II.

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue as to any material fact" and "the moving party

10

is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We owe no special deference to the motion judge's conclusions on issues of law. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We consider the facts in a light most favorable to the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995). "[U]nder Rule 4:46-2, when deciding summary judgment motions trial courts are required to engage in the same type of evaluation, analysis or sifting of evidential materials as required by Rule 4:37-2(b) in light of the burden of persuasion that applies if the matter goes to trial." Id. at 539-40.

> The judge's function is not himself . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Credibility determinations will continue to be made by a jury and not the judge. If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a genuine issue of material fact for purposes of Rule 4:46-2.
>
> [Id. at 540 (emphasis added) (internal citations and quotation marks omitted).]

Generally, questions of proximate and intervening cause are left to the jury for its factual determination. L.E. v. Plainfield Pub. Sch. Dist., 456 N.J. Super. 336, 350 (App. Div. 2018). "[I]f the fact finder can reasonably draw or reject an inference or if conflicting inferences may be drawn from a given set of

11

facts, the issue is one of fact, and summary judgment is inappropriate." Norman v. Selective Ins. Co., 249 N.J. Super. 104, 109 (App. Div. 1991).

Both the UM statute, and the cases interpreting it, hold that there must be "a substantial nexus – that is, a substantial connection or link – between the injury and the use of the vehicle in order for there to arise the obligation to provide coverage." Livsey, 197 N.J. at 533.

> We consider that the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected.
>
> [Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J. Super. 29, 38 (App. Div. 1973) (emphasis added).]

In addressing the role of the automobile in the attack, the judge stated that:

> The record clearly demonstrates that [p]laintiff was the unfortunate victim of a crime. The incident complained of was one of kidnapping, threats and assault. While it involved an automobile within which [p]laintiff was held during the attempted robbery, the vehicle itself was not the instrumentality of any documented injury.

12

The only effect that the crash of the vehicle had was to bring the criminal episode to an end. A review of case law interpreting the [UM] statute where criminal acts are involved will establish that this mater may not give rise to an [UM] claim as outside of the contemplation of the [UM] coverage.

The question of whether there was a substantial nexus between the vehicle and the injuries, however, is a disputed question of fact that cannot be resolved summarily. Plaintiff was treated at the scene for "pain in his knee, neck and back from the crash," and he contends that he suffered "severe personal injuries after the vehicle he was traveling in slammed into a rock wall, causing him to be violently thrown forward into the vehicle[']s back seat." He also said that he "sustained bruising and severe pain from being repeatedly punched and pistol whipped" and that he also suffered "emotional and psychological injuries." Plaintiff was diagnosed with post-traumatic stress disorder (PTSD) as a result of the incident. Plaintiff "has flashbacks . . . [that] come on whenever [plaintiff] sees a white Jetta, the kind of car he had when the assault occurred," and he "becomes psychologically distressed when he recalls or speaks about the assault or sees something that reminds him of it, such as a white Jetta."

III.

Plaintiff introduced evidence from a treating psychiatrist, Dr. Burton Weiss, addressing the purported substantial nexus between the vehicle and

injuries. Dr. Weiss submitted a 2015 narrative report (the report), and a 2017 certification (the certification). In the report, Dr. Weiss stated that he evaluated plaintiff about the events surrounding "his assault of April 9, 2012," and that plaintiff was "the victim of a violent crime involving a pistol and motor vehicle." He diagnosed plaintiff with PTSD "as the direct result of the assault of April 9, 2012."

In the certification, Dr. Weiss explained his use of the term "assault" in the report. He stated that,

> My use of that word was not intended to be limited to the physical touching by the assailants[,] but was intended to be all encompassing and intended to include all of the actions and events that happened to [plaintiff] that day[,] including and significantly, the use of the motor vehicle in the assailant's conduct.

He continued and explained that, "[t]he use of the motor vehicle was instrumental in the actions of the assailants and the injury sustained by [plaintiff]." He concluded that plaintiff has PTSD "as the direct result of the assault of April 9, 2012. Assault was meant to include the operation of the motor vehicle as used against [plaintiff] on that day."

The judge stated that Dr. Weiss's certification "ha[d] no validity in the eyes of the [c]ourt." The judge concluded that Dr. Weiss's "broadened opinion [was] nothing more than an unfounded net opinion." The net opinion rule

14

"forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). The rule mandates that an expert provide "the why and wherefore that supports the opinion, rather than a mere conclusion." Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013) (internal quotation marks omitted).

Here, though, the certification was a "clarification" of the opinion he previously expressed in his report. "The failure of an expert to give weight to a factor thought important by an adverse party does not reduce his testimony to an inadmissible net opinion if he otherwise offers sufficient reasons which logically support his opinion." Rosenberg v. Tavorath, 352 N.J. Super. 385, 402 (App. Div. 2002). "[A]n expert witness is always subject to searching cross-examination as to the basis of his opinion[.]" Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 54 (App. Div. 1990). Dr. Weiss provided "sufficient reasons which logically support his opinion" as to plaintiff's PTSD diagnosis. Rosenberg, 352 N.J. Super. at 402. He sought to clarify why he believed plaintiff suffered from a particular ailment and what caused this condition. Moreover, Dr. Weiss would be subject to cross-examination as to the basis of his diagnosis. See Glenpointe Assocs., 241 N.J. Super. at 54.

15

## IV.

As to plaintiff's certification, the judge stated that it "would have to be considered nothing more than a sham affidavit." He stated that "[w]hile [p]laintiff argues in this sham affidavit that he was 'imprisoned and helpless[,]' that situation did not arise from the use of a motor vehicle but rather from the use or threatened use of a gun."

The sham affidavit doctrine "refers to the trial court practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." Shelcusky v. Garjulio, 172 N.J. 185, 194 (2002). It "calls for rejection of the affidavit where the contradiction is unexplained and unqualified by the affiant. In such circumstances, the alleged factual issue in dispute can be perceived as a sham, and as such it is not an impediment to a grant of summary judgment." Ibid. "Sham facts should not subject a defendant to the burden of a trial." Id. at 201. The rule "does not intrude on the function of the jury because it does not require the trial [judge] to determine credibility, or to determine the relative weight of conflicting evidence." Ibid.

Here, plaintiff was never deposed so there is no prior testimony in the same action. Additionally, there is no contradiction. "Courts should not reject

A-2707-17T3

alleged sham affidavits . . . where an affidavit does not contradict patently and sharply the earlier deposition testimony[.]" Ibid. There was no "patent[] and sharp[]" contradiction between plaintiff's certification and his earlier answers to police investigators. Thus, it was improper for the judge to find that the affidavit was one that set forth "[s]ham facts [that] should not subject a defendant to the burden of a trial." Ibid. The sham affidavit doctrine "does not intrude on the function of the jury because it does not require the trial court to determine credibility, or to determine the relative weight of conflicting evidence." Ibid. But yet, this is precisely what the judge did in determining that "[w]hile [p]laintiff argues in this sham affidavit that he was 'imprisoned and helpless[,]' that situation did not arise from the use of a motor vehicle but rather from the use or threatened use of a gun."

Reversed and remanded for further proceedings consistent with this opinion. In fairness to the judge, since he had made credibility determinations on the summary judgment motion, we direct that another judge handle the remand proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2707-17T3