185 N.J. Super. 183 (1982)
447 A.2d 1344
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO., PLAINTIFF-APPELLANT,
v.
ESTATE OF HARVEY MILLER, DECEASED, JERMAINE MILLER AND SARA RAGIN, GENERAL ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF SHIRLEY MILLER, DECEASED, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 18, 1982.
Decided June 23, 1982.
*184 Before Judges FRITZ, ARD and TRAUTWEIN.
*185 Paul W. Rosenberg argued the cause for appellant (Rappoport & Rosenberg, attorneys).
Robert A. Sand argued the cause for respondents.
The opinion of the court was delivered by FRITZ, P.J.A.D.
The sole question in this case is whether an intentional occurrence, produced by design of the actor but wholly unexpected and untoward from the standpoint of the victims, is an "accident" within the purview of personal injury protection benefits under N.J.S.A. 39:6A-4, commonly known as PIP benefits. The trial judge, in a half-page written letter opinion which announces his conclusion but denies us the benefit of any rationale in arriving at the result, answered that question in the affirmative. We agree and affirm.
For the purposes of this declaratory judgment action, the facts are not in dispute. Shirley Miller, owner of the automobile involved, which automobile was insured by Pennsylvania National Mutual Casualty Insurance Company by way of a family combination automobile policy which provided PIP benefits, permitted her estranged husband to operate the automobile in which she and her daughter Jermaine were passengers. Her husband intentionally drove off the roadway and into the Delaware River killing himself and Shirley.[1] Jermaine managed to survive the accident.
In the declaratory judgment action the trial judge determined that Jermaine Miller and the estate of Shirley Miller are entitled to recover PIP benefits under the policy. He did this by reciting N.J.S.A. 39:6A-4, appropriately abridged, and then simply announcing:
I construe the words "without regard to ... fault of any kind," as including fault which arises from an intentional act. Consequently, the plaintiff could not *186 exclude that coverage from its policy; it was bound by the statute to do the opposite.
Plaintiff bottoms its appeal on two arguments. First, it urges that the trial judge erred in ruling that the "No Fault Statute" provides coverage for intentional injuries. Second, plaintiff insists that the automobile insurance policy it issued is a contractual relation between the parties and not only requires an accident but specifically excludes intentional acts. In view of the statutory compulsion respecting the inclusion of PIP benefits pursuant to the statute in "[e]very automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law" (N.J.S.A. 39:6A-4), these arguments merge into one, the persuasiveness of which (or lack thereof) will be demonstrated by the answer to the question posited above. This because an insurance company may not by contract limit the terms of coverage ordered by statute. Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 482 (App.Div. 1976). In our effort we search for the legislative intent manifested by inclusion of the word "accident" in the statute.
N.J.S.A. 39:6A-4 reads as follows in pertinent part:
Personal injury protection coverage, regardless of fault
Every automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage, as defined herein below, under provisions approved by the Commissioner of Insurance, for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident involving an automobile, to other persons sustaining bodily injury while occupying the automobile of the named insured or while using such automobile with the permission of the named insured and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile.
It is to be seen at the outset that the statute does not expressly exclude intentional acts. Quite the contrary: rather it excludes consideration of "negligence, liability or fault of any kind." In agreement with the trial judge, we are persuaded *187 that the failure to exclude intentional acts and the express inclusion of the language quoted immediately above clearly demonstrates, by itself, an intent not to limit the operation of the statute to occurrences resulting from unintentional conduct or to conduct which, though intentional, lacks a design to produce the result which occurs. It is clear that, at least with respect to the occurrence, the Legislature was endeavoring to assure the broadest coverage possible so long as an automobile was involved in that which happened.
Perhaps of greater significance in our search for the answer to the question posed by the first sentence of this opinion is the expression of legislative intent to be found in N.J.S.A. 39:6A-7. This section, expressly limiting the mandate of N.J.S.A. 39:6A-4 and to be read in pari materia with it, satisfies us beyond doubt that the Legislature considered the problem of intentionally produced harm. It reads:
39:6A-7. Exclusions
Insurers may exclude a person from benefits under section 4a., b., c., d., and e. and section 10 [§§ 39:6A-4 and 10] where such person's conduct contributed to his personal injuries or death occurred in any of the following ways:
a. while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or
b. while acting with specific intent of causing injury or damage to himself or others.
The consequence of this consideration was quite obviously an intent not to exclude the results of intentionally inflicted injury except where the conduct of the injured person was implicated. Clearly such is not the case here.
We are confident the word "accident" was chosen simply to add the requirement that something not usual must comprise the event involving the automobile. We believe that "accident" was a handy common noun which came as close as the Legislature could come to describing something which went beyond the ordinary and anticipated safe operation of an automobile. There is no reason to conclude that the word "accident" ipso facto excludes intentional occurrences. Among the definitions *188 offered by Black's Law Dictionary 14 (5 ed. 1979) is "an event which under the circumstances is unusual and unexpected by the person to whom it happens." Black's makes a special reference to accident with respect to insurance contracts and defines that as "an event which, under circumstances, is unusual and not expected by the person to whom it happens." Ibid. In this latter definition Black's does relate that "the word means an unexpected happening without intention or design" but includes that statement in context with the observation that the term is "[a] more comprehensive term than `negligence.'" Ibid. Although the court in Sciascia v. American Ins. Co., 183 N.J. Super. 352 (Law Div. 1982), denied uninsured motorist coverage because of the absence of a substantial connection between the victim's death and the use of an uninsured automobile, it opined, correctly we believe, that whether an event constitutes an "accident" must be measured from the perspective of the victim. Accord, Nallan v. Union Labor Life Ins. Co., 42 N.Y.2d 874, 397 N.Y.S.2d 786, 366 N.E.2d 874 (Ct.App. 1977); Tomlin v. State Farm Mut. Auto. Liab. Ins. Co., 95 Wis.2d 215, 290 N.W.2d 285 (Sup.Ct. 1980). See Annotation, "Liability Insurance: Assault as an `Accident,' or Injuries Therefrom as `Accidentally' Sustained, Within Coverage Clause," 72 A.L.R.3d 1090, § 4 at 1100-1104 (1976).
Webster's Third New International Dictionary (1971) includes among its definitions of "accident" a particularly apt and relevant statement: "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief."
Our determination here that an accident may result from intention for purposes of personal injury protection insurance coverage is not contrary to the law elsewhere generally in insurance coverage matters. In Jernigan v. Allstate Ins. Co., *189 269 F.2d 353 (5 Cir.1959), reh. den. 272 F.2d 857 (5 Cir.1959), the insured's aunt intentionally and willfully drove the insured's automobile over him, inflicting injuries from which he died. The court held that, under Louisiana law, the assault was within the coverage of the policy as producing bodily injury "caused by accident." The same result obtains under Mississippi law, which provides that an assault not provoked by the party assaulted comes within the protection of a policy covering injuries caused by accident. Western Cas. & Sur. Co. v. Aponaug Mfg. Co., 197 F.2d 673 (5 Cir.1952). Damages resulting from an unprovoked assault and battery committed upon a taxicab passenger by the driver are, under West Virginia law, "damages to a person `accidentally receiving bodily injuries'" under the terms of an insurance policy. Huntington Cab Co. v. American Fid. & Cas. Co., 155 F.2d 117, 119 (4 Cir.1946).
If the statute were not so clear as we believe it to be, we would resolve any ambiguity in favor of the policyholder and the payment of PIP benefits in any event. Even before the New Jersey Automobile Reparation Reform Act (N.J.S.A. 39:6A-1 et seq.), the public policy of this State required liberal construction of liability insurance laws in order to effect the broadest range of protection to users of the highways. State Farm v. Zurich Am. Ins. Co., 62 N.J. 155, 168 (1973). The mandate of that policy was reinforced and broadened with the enactment of the so-called No Fault Law. Consistently, the statute and policies written thereunder have been construed to assure the broadest personal injury protection coverage to the named insured and members of his family residing in his household. See, e.g., Harlan v. Fidelity & Cas. Co., 139 N.J. Super. 226 (Law Div. 1976). This is in order that the public policy and the statutory mandate might be served. Hoglin v. Nationwide Mut. Ins. Co., supra.
We are satisfied that the trial judge achieved a correct result and accordingly his judgment is affirmed.
NOTES
[1] A jury had determined that Harvey Miller intentionally caused the accident.