713 A.2d 557

HOME STATE INSURANCE COMPANY, PLAINTIFF–APPELLANT, v. CONTINENTAL INSURANCE COMPANY, DEFENDANT–RESPONDENT, AND JAIME SKIERSKI, AN INFANT BY HER GUARDIAN AD LITEM, BEVERLY SKIERSKI, IRVING RAPHAEL, INC., LEILA STEINNAGEL, JOHN DOE AND JANE DOE, NAMES BEING FICTITIOUS, REAL NAMES UNKNOWN, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued May 13, 1998—Decided July 6, 1998.

Brochin, J.A.D., concurred in result and filed opinion.

Wefing, J.A.D., dissented and filed opinion.

Before Judges BAIME, BROCHIN and WEFING.

*David A. Mazie*, argued the cause for appellant (*Nagel Rice & Dreifuss*, attorneys; *Mr. Mazie*, on the brief).

*Jamie D. Happas*, argued the cause for respondent (*Hoagland, Longo, Moran, Dunst & Doukas*, attorneys; *Mr. Happas*, on the brief).

The opinion of the court was delivered by

BAIME, P.J.A.D.

Jaime Skierski sustained injuries when she was assaulted by other students while a passenger on a school bus owned and operated by Irving Raphael, Inc. (Raphael). Through her guardian, she brought suit against Raphael, claiming that the driver was negligent in failing to stop the bus and quell the altercation. Raphael notified Home State Insurance Company (Home State), its automobile insurer, and Continental Insurance Company (Continental), its general liability insurer, of the underlying suit. Home State filed an answer on behalf of Raphael, but subsequently requested that Continental take over the defense, asserting that the incident was covered under Raphael's general liability insurance. Continental refused Home State's demand. Home State instituted a declaratory judgment action against Continental to compel the carrier to defend Raphael. While the declaratory judgment action was pending, Skierski's suit against Raphael was settled. The Law Division granted Continental's motion for summary judgment, finding that Skierski's claim arose out of Raphael's use and operation of the bus and thus fell within the purview of Home State's insuring agreement. The court also concluded that Continental's policy did not afford coverage. Home State appeals. We affirm.

We begin our analysis by examining the insuring agreement contained in the Home State policy. The policy issued by Home State covered all claims against Raphael caused by an "accident" and "resulting from ownership, maintenance or use" of the covered automobile. This policy language differs slightly from that mandated by *N.J.S.A.* 39:6B-1. The statute requires liability coverage for all claims resulting from an accident "arising out of the ownership, maintenance or use" of a motor vehicle. It is axiomatic that an insurer may not afford less coverage than that mandated by the Legislature. *State Farm Mut. Auto. Ins. Co. v. Zurich Am. Ins. Co.,* 62 *N.J.* 155, 170, 299 *A.*2d 704 (1973); *Pasterchick v. Insurance Co. of North Am.,* 150 *N.J.Super.* 90, 93–94, 374 *A.*2d 1243 (App.Div.1977). Where a policy provision conflicts with the coverage required by a statute, it is inapplicable and is deemed amended to conform to the statutory standard. *Motor Club of Am. Ins. Co. v. Phillips,* 66 *N.J.* 277, 286, 330 *A.*2d 360 (1974); *Fellippello v. Allstate Ins. Co.,* 172 *N.J.Super.* 249, 261, 411 *A.*2d 1137 (App.Div.1979), *certif. denied,* 85 *N.J.* 481, 427 *A.*2d 574 (1980). While it is arguable that the Home State policy language, more particularly the phrase "resulting from," requires a strict causal relationship between the "ownership, maintenance or use" of the automobile and the claim made against the insured, we are obliged to apply the statutory language.

We note at this point that, while Home State's policy includes coverage for accidents that arise out of the "ownership, maintenance or use" of the school bus, Continental's policy contains the same language excluding such coverage. In the proceedings below, both Home State and Continental took the position that their policies were mutually exclusive. In their appellate briefs, neither Home State nor Continental argues or suggests that their policies provide overlapping coverage. *See Salem Group v. Oliver,* 248 *N.J.Super.* 265, 274–75, 590 *A.*2d 1194 (App.Div.1991), *aff'd,* 128 *N.J.* 1, 607 *A.*2d 138 (1992); 7A Appleman, *Insurance Law and Practice,* § 4500, at 177–90 (1979). We thus assume for the purpose of this appeal, and without deciding the issue, that only one of the two policies affords coverage. *See State of New*

*Jersey, Office of Employee Relations v. Communications Workers of Am., AFL–CIO,* 154 *N.J.* 98, 107–09, 711 *A.2d* 300 (1998).

We must determine whether Skierski's bodily injury claim related to an accident "arising out of the ownership, maintenance or use" of Raphael's school bus. We are aided by several well-settled principles. While insurance policies are contractual in nature, they are not ordinary agreements but "contracts of adhesion between parties who are not equally situated." *Meier v. New Jersey Life Ins. Co.,* 101 *N.J.* 597, 611, 503 *A.2d* 862 (1986); *see also Sparks v. St. Paul Ins. Co.,* 100 *N.J.* 325, 335, 495 *A.2d* 406 (1985); *Di Orio v. New Jersey Mfrs. Ins. Co.,* 79 *N.J.* 257, 269, 398 *A.2d* 1274 (1979); *Allen v. Metropolitan Life Ins. Co.,* 44 *N.J.* 294, 305–06, 208 *A.2d* 638 (1965). To that extent, insurance contracts are "unipartite in character." *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur,* 35 *N.J.* 1, 7, 170 *A.2d* 800 (1961). These circumstances long ago fathered the principle that doubts as to the existence of coverage must generally be resolved in favor of the insured. *Id.* at 8, 170 *A.2d* 800. Our courts "have adopted the principle giving effect to the 'objectively reasonable expectations' of the insured for the purpose of rendering a 'fair interpretation' of the boundaries of insurance coverage." *Meier v. New Jersey Life Ins. Co.,* 101 *N.J.* at 612, 503 *A.2d* 862 (quoting *Di Orio v. New Jersey Mfrs. Ins. Co.,* 79 *N.J.* at 269, 398 *A.2d* 1274). Of course, this principle "is, and indeed always has been, one of construction, simply an aid to the proper interpretation of terms devised by the professional underwriter." *Weedo v. Stone–E–Brick, Inc.,* 81 *N.J.* 233, 246, 405 *A.2d* 788 (1979). Only genuine interpretational difficulties engage the doctrine of ambiguity. *American White Cross Lab., Inc. v. Continental Ins. Co.,* 202 *N.J.Super.* 372, 381, 495 *A.2d* 152 (App.Div.1985). But if the language of a policy will support two meanings, one favorable to the insured and the other favorable to the insurer, that which will sustain coverage will be applied. *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur,* 35 *N.J.* at 7, 170 *A.2d* 800.

■ These principles have particular efficacy in the area of automobile liability insurance which is mandated by statute. Such policies are to be construed broadly in favor of the insured and injured persons to effectuate the strong legislative policy of assuring financial protection for innocent victims of automobile accidents. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Estate of Miller*, 185 *N.J.Super.* 183, 187, 447 *A.*2d 1344 (App.Div.1982).

■ It is against this backdrop that we consider whether Skierski's claim for bodily injury stemmed from an accident "arising out of the ownership, maintenance or use" of the school bus. We do not write on a blank slate. In *Westchester Fire Insurance Co. v. Continental Insurance Cos.*, 126 *N.J.Super.* 29, 312 *A.*2d 664 (App.Div.1973), *aff'd o.b.*, 65 *N.J.* 152, 319 *A.*2d 732 (1974), a passenger in an automobile insured by Westchester threw a wooden stick out of the rear window, striking a pedestrian who then brought suit against the driver and owner of the vehicle. Westchester's policy covered accidents "arising out of the ownership, maintenance or use" of the covered automobile. *Id.* at 35, 312 *A.*2d 664. Westchester instituted a declaratory judgment action against Continental, claiming that the risk fell within Continental's homeowner's policy. Continental's policy contained an exclusionary clause making its coverage inapplicable to "the . . . use of automobiles. . . ." *Id.* at 33, 312 *A.*2d 664 (ellipses in original).

We rejected Westchester's argument "that the words 'arising out of the . . . use' requir[ed] or justif[ied] the interpretation that before coverage exists it must appear that the injury is a direct and proximate result, in a strict legal sense, of the use of the automobile." *Id.* at 37, 312 *A.*2d 664 (ellipses in original). We said that the policy language "does not require that the injury be directly or proximately caused by the automobile itself or by its motion or operation." *Ibid.* Instead, we held "that the phrase 'arising out of' must be interpreted in a broad and comprehensive sense to mean 'originating from' or 'growing out of' the use of the automobile." *Id.* at 38, 312 *A.*2d 664. It was said that "there

need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise." *Ibid.* We concluded that "[t]he inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected." *Ibid.* So posited, we held that the claim fell within the coverage afforded by the automobile liability policy issued by Westchester. In contrast, while recognizing that "exclusions ... must be strongly construed against the insurer," we said that the "clear import and intent" of the exclusionary language contained in the Continental policy barred coverage. *Id.* at 41, 312 *A.*2d 664; *see also Allstate Ins. Co. v. Moraca,* 244 *N.J.Super.* 5, 13 n. 1, 581 *A.*2d 510 (App.Div.1990); *Scarfi v. Aetna Cas. & Sur. Co.,* 233 *N.J.Super.* 509, 515, 559 *A.*2d 459 (App.Div.1989).

These principles were more recently applied by our Supreme Court in *Smaul v. Irvington General Hospital,* 108 *N.J.* 474, 530 *A.*2d 1251 (1987), and *Lindstrom v. Hanover Insurance Co.,* 138 *N.J.* 242, 649 *A.*2d 1272 (1994), albeit in the context of first-party personal injury protection (PIP) benefits. In *Lindstrom,* the claimant sustained grave injuries resulting from a gunshot wound inflicted in a random, drive-by shooting. *Id.* at 244, 649 *A.*2d 1272. Citing our opinion in *Westchester,* the Court found that a "substantial nexus" existed between the claimant's injuries and the use of an automobile. *Id.* at 250–53, 649 *A.*2d 1272. In reaching this conclusion, the Court noted its view that "the automobile did more than provide a setting or an enhanced opportunity for the assault." *Id.* at 252, 649 *A.*2d 1272.

In *Smaul,* the claimant was pulled from his automobile, assaulted and then robbed after he had stopped his vehicle to ask for directions. 108 *N.J.* at 475–76, 530 *A.*2d 1251. Again applying the "substantial nexus" test, the Court held that "the injury, although not foreseen or expected, nevertheless [was of such a

nature as to] be, in the contemplation of the parties to the insurance contract, a 'natural or reasonable incident or consequence of the use of the automobile....'" *Id.* at 478, 530 *A.*2d 1251 (quoting *Westchester Fire Ins. Co. v. Continental Ins. Cos.,* 126 *N.J.Super.* at 38, 312 *A.*2d 664).

We most recently applied these principles in *Stevenson v. State Farm Indemnity Co.,* 311 *N.J.Super.* 363, 709 A.2d 1359 (App.Div. 1998). In *Stevenson,* we upheld entitlement to personal injury benefits in a consolidated case in which the claimants sustained serious injuries in separate carjacking incidents in Camden. *Id.* at 375–78, 709 *A.*2d 1359. In both cases, the victims picked up a stranger and offered to give him a ride to an unfamiliar location in the city. *Id.* at 366–67, 368–69, 709 *A.*2d 1359. Both victims were shot while they were inside their vehicles and, in both instances, the assailants were inside the vehicles as well. *Id.* at 372–74, 709 *A.*2d 1359. Relying on *Lindstrom* and *Smaul,* we held that the "vehicular nexus" between the carjackings and the plaintiffs' respective vehicles was "demonstrable and undeniable." *Id.* at 377, 709 *A.*2d 1359. We determined that the vehicles were not merely an attendant circumstance, but that they were " 'central to the incident.' " *Ibid.* (quoting *Smaul v. Irvington General Hosp.,* 108 *N.J.* at 478, 530 *A.*2d 1251). Finally, we concluded that the "[d]enial of PIP coverage [under these circumstances would be] inconsistent with the latest legislative and judicial expressions directed to protect the public...." *Id.* at 374, 709 *A.*2d 1359.

We also applied these principles in *Diehl v. Cumberland Mutual Fire Insurance Co.,* 296 *N.J.Super.* 231, 686 *A.*2d 785 (App. Div.), *certif. denied,* 149 *N.J.* 144, 693 *A.*2d 112 (1997). There, a dog in the open cargo area of a pick-up truck bit a pedestrian who brought suit against the owner of the vehicle. *Id.* at 233, 686 *A.*2d 785. Both the homeowner's and automobile insurers were notified of the claim and disclaimed liability. The Law Division found that the injury did not arise out of the use of an automobile and concluded the homeowner's insurance policy provided coverage. We reversed. *Id.* at 236, 686 *A.*2d 785. We said that the incident

"was a natural and foreseeable consequence of the use of the vehicle, and there was a substantial nexus between the dog bite and the use of the [pick-up truck] at the time the dog bit the plaintiff." *Ibid.* We thus held that the risk of the accident fell within the coverage provided by the automobile liability policy, and was excluded from the coverage afforded under the home-owner's policy. *Ibid.*

We do not suggest that our decisions on the subject are unanimous in affording coverage. The issue has received uneven treatment. *See, e.g., Morgan v. Prudential Ins. Co. of Am.,* 242 *N.J.Super.* 638, 577 *A.*2d 1300 (App.Div.) (denying coverage where decedent was shot by estranged husband while seated in parked automobile), *certif. denied,* 122 *N.J.* 370, 585 *A.*2d 377 (1990); *Vasil v. Zullo,* 238 *N.J.Super.* 572, 570 *A.*2d 464 (App.Div.1990) (denying coverage where decedent was stabbed after an altercation with occupants of another automobile); *Kordell v. Allstate Ins. Co.,* 230 *N.J.Super.* 505, 554 *A.*2d 1 (App.Div.) (denying coverage where insured died from acute myocardial infarction while stopped at red light), *certif. denied,* 117 *N.J.* 43, 563 *A.*2d 813 (1989); *Uzcatequi–Gaymon v. New Jersey Mfrs. Ins. Co.,* 193 *N.J.Super.* 71, 472 *A.*2d 163 (App.Div.1984) (denying coverage where decedent was shot and killed by persons attempting to rob him of his automobile); *see also Foss v. Cignarella,* 196 *N.J.Super.* 378, 482 *A.*2d 954 (Law Div.1984) (denying coverage where insured was stabbed while seated in his vehicle after an automobile accident). Candor requires us to confess that there is a thin, wavery line between incidents involving the use of an automobile and those in which the presence of the vehicle at the scene is merely an "attending circumstance," *see Smaul v. Irvington General Hosp.,* 108 *N.J.* at 478, 530 *A.*2d 1251, and that several of our decisions are difficult to reconcile. We add that decisions of other jurisdictions are not greatly instructive because other states do not apply the "substantial nexus" test but instead require a strong showing of causality. *See Trott v. Finlayson,* 690 *So.*2d 718 (Fla.Dist.Ct.App.1997) (denying PIP and uninsured motorist coverage where plaintiff sustained injuries from shooting incident

while entering and driving away in vehicle); *Niglio v. Omaha Property & Cas. Ins. Co.,* 679 *So.*2d 323 (Fla.Dist.Ct.App.1996) (denying coverage to pedestrian injured in a drive-by shooting because the vehicular participation in the drive-by shooting was merely an incidental contribution to the injury), *review denied,* 689 *So.*2d 1071 (1997); *Payne v. Twiggs County Sch. Dist.,* 269 *Ga.* 361, 496 *S.E.*2d 690 (1998) (student attacked by fellow student passenger on bus denied coverage under school district's policy because student's injury was not proximately caused by accident or collision in which bus was involved); *Westberry v. State Farm Mut. Auto. Ins. Co.,* 179 *Ga.App.* 700, 347 *S.E.*2d 688 (1986) (taxi cab driver murdered during robbery denied no-fault coverage because only incidental connection existed between taxi and robbery); *Calvert Ins. Co. v. CIGNA Ins. Co.,* 239 *A.D.*2d 243, 658 *N.Y.S.*2d 12 (1997) (assault on student passenger while riding school bus not covered because injuries did not result from use of bus); *Horney v. Tisyl Taxi Corp.,* 93 *A.D.*2d 291, 461 *N.Y.S.*2d 799 (1983) (plaintiff who was assaulted by taxi cab driver denied coverage under New York's Motor Vehicle Law § 388 because plaintiff's injuries were not proximately caused by operation or driving function of vehicle); *Erie Ins. Exchange v. Claypoole,* 449 *Pa.Super.* 142, 673 *A.*2d 348 (1996) (no causal connection between injuries sustained from molestation of students by school bus driver and bus itself); *Roach v. Port Auth. of Allegheny County,* 380 *Pa.Super.* 28, 550 *A.*2d 1346 (1988) (passenger injured in fight between two other passengers on bus denied coverage under Pennsylvania Motor Vehicle Financial Responsibility Law §§ 1710–98 because injuries did not result from maintenance and use of motor vehicle).

We are satisfied that there was a substantial nexus between Skierski's injuries and the use of the covered automobile. In our view, the bus provided more than a "mere setting" for the assault. *See Lindstrom v. Hanover Ins. Co.,* 138 *N.J.* at 252, 649 *A.*2d 1272; *Morgan v. Prudential Ins. Co. of Am.,* 242 *N.J.Super.* at 642, 577 *A.*2d 1300. Instead, the assault upon Skierski and the resulting injuries, as alleged in her complaint, " 'originate[d] from,'

'gr[ew] out of' or ha[d] a 'substantial nexus' with" the activity for which insurance coverage was afforded by the automobile policy. *American Motorists Ins. Co. v. L–C–A Sales Co.*, 155 *N.J.* 29, ——, 713 *A.2d* 1007, 1010 (1998) (quoting *Records v. Aetna Life & Cas. Ins.*, 294 *N.J.Super.* 463, 468, 683 *A.2d* 834 (App.Div.1996), *certif. denied*, 151 *N.J.* 463, 700 *A.2d* 876 (1997)).

The fight between the student passengers while being transported to school was a foreseeable consequence of the "use" and "operation" of the school bus. The simple and overriding fact is that dogs bite, as in *Diehl*, and children fight, as in this case. However antisocial such conduct may be, everyday experience tells us that children fuss and fight while enroute to school. Moreover, we take particular note of the fact that Skierski's negligence claim against Raphael was rooted in the driver's failure properly to operate the bus. Specifically, Skierski alleged in her complaint that the bus driver was negligent in driving on and failing to stop the vehicle and quell the altercation. We have no doubt that part of the essential duties of a school bus driver is to supervise the children and provide safe passage to and from school. Such altercations, then, and the need to prevent them, are natural incidents of the "use" and "operation" of a school bus. *See Jackson v. Hankinson*, 51 *N.J.* 230, 233–34, 238 *A.2d* 685 (1968). We thus hold that Skierski's claim resulted from an "accident," *see Property Cas. Co. of MCA v. Conway*, 147 *N.J.* 322, 327–28, 687 *A.2d* 729 (1997); *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 181–183, 607 *A.2d* 1255 (1992); *Stevenson v. State Farm Indem. Co.*, 311 *N.J.Super.* at 375–77, 709 *A.2d* 1359, "arising out of the . . . use of the [covered] automobile." Because the issue of overlapping coverage has not been raised, we also affirm the Law Division's conclusion that Skierski's claim was a risk falling within the coverage of Home State's policy and the exclusion of Continental's policy.

## II.

Ours is a collegial court, but no member is obliged to sacrifice his or her conscientiously held view. It is, nevertheless, unfortu-

nate that this rather simple fact pattern has yielded three separate opinions. An insurance contract represents an exchange of an uncertain loss for a certain loss. *See Owens–Illinois, Inc. v. United Ins. Co.,* 264 *N.J.Super.* 460, 507, 625 *A.*2d 1 (App.Div. 1993), *rev'd on other grounds,* 138 *N.J.* 437, 650 *A.*2d 974 (1994). The uncertain loss is the risk of incurring legal liability and the certain loss is the premium payment. *Ibid.* The insurer agrees to assume the risk of the insured's liability in exchange for a fixed sum of money. *Ibid.* At the heart of the transaction is the insured's purchase of certainty—a valuable commodity.

But insurance problems have spawned a mountain of litigation in recent times. The point to be stressed is that the uncertainty generated by contractual language in different types of policies, and the corresponding need to litigate, are exactly what the insured sought to guard against when it purchased insurance.

Here, the rights of the insured are fully protected. The fight is between insurers. But the need to provide the insured with certainty requires that insurers know in advance exactly what risks are embraced within the insurance contracts they issue. Against this backdrop, it is reasonable to suggest that the Commissioner of Banking and Insurance may wish to work with the insurance industry to address and resolve the type of problem with which this fractured court is now confronted.

BROCHIN, J.A.D. (concurring).

Judge Baime's opinion has convinced me that if the facts of this case were presented in the context of a claim by Home State's insured or by its insured's injured victim against the motor vehicle insurer, the expansive interpretation which New Jersey law gives to the statutory phrase, "resulting from ownership, maintenance or use" of a motor vehicle, would require us to hold that Home State is obligated to defend and to indemnify. Judge Wefing's opinion has convinced me that if the same facts were presented in an action by Continental's insured or by its insured's injured victim against the general liability insurer, the logic of the situa-

tion would require us to hold that the general liability insurer is obligated to defend and to indemnify.

Because the policy language defining the scope of Home State's coverage is the same as the policy language defining the motor vehicle exclusion from Continental's coverage, this conclusion seems anomalous. However, because public policy considerations have led us to construe coverage provisions broadly, particularly in motor vehicle policies, and to construe exceptions from coverage narrowly, *see Salem Group v. Oliver,* 248 *N.J.Super.* 265, 271, 590 *A.*2d 1194 (App.Div.1991), *aff'd,* 128 *N.J.* 1, 607 *A.*2d 138 (1992), requiring both insurers to share the duty to indemnify their insured would be the just result.

However, the parties to this case have not given us the option to hold both of them liable to provide coverage. They have both asked us to choose which one of them, whether the automobile liability insurer or the general liability insurer, is responsible to indemnify the insured. In view of that limitation, I join in the result reached by Judge Baime and vote to hold Home State Insurance Company liable to provide coverage.

WEFING, J.A.D. (dissenting).

My colleagues conclude, in this inter-company coverage dispute between two insurance carriers, that the insured's automobile insurer, Home State Insurance Company (Home State) is responsible to provide coverage to Irving Raphael, Inc. (Raphael), rather than Raphael's commercial general liability insurer, Continental Insurance Company (Continental). I am unable to agree and I therefore dissent.

The record presented to us in this declaratory judgment action contains only a limited description of the underlying incident. The following is taken from interrogatory answers supplied by Jaime Skierski during the course of her first party suit for damages.

According to Ms. Skierski, in August 1992, she was attending a summer program at the Perth Amboy Vocational School. On

August 4, 1992, she was being transported there on a Raphael bus which carried students from both South Amboy and Perth Amboy. These students came from disparate backgrounds and there had been incidents between the two groups during the summer. It is unclear from Ms. Skierski's interrogatory answer whether these prior incidents occurred on a school bus, on school property, on both, or on neither. In her interrogatory answer, Ms. Skierski wrote that two Perth Amboy students "accosted [her] verbally" and that the "verbal assault accelerated ... to involve more and more of the [Perth Amboy] girls." One pulled Ms. Skierski's hair and she was then physically attacked by approximately nine of the Perth Amboy students. The bus driver did not stop the bus until the bus reached its first stop in Perth Amboy, at which point all of the Perth Amboy students disembarked. The driver then returned to the vocational school and reported the incident to the school's principal. The record does not reveal how long the incident took. We are informed that Ms. Skierski's claim against Raphael has been settled.

Raphael held two policies of insurance, one a business auto policy issued by Home State and the other a commercial general liability policy issued by Continental. Under the Home State policy, Home State agreed it would:

> pay all sums an 'insured' legally must pay as damages because of 'bodily injury' ... caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'

Under the Continental policy, Continental agreed it would:

> pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' .... caused by an 'occurrence'....

Continental, however, excluded from its coverage claims "arising out of the ownership, maintenance, use or entrustment to others of any ... 'auto' ..."

I approach this issue in a different manner than my colleagues in recognition that the parties to this dispute are Home State and Continental. Their mutual insured, Raphael, is not a party and is not affected by its disposition. Neither, from all that appears, is the injured victim, Ms. Skierski. The parties to this dispute agree

that one of them is responsible to absorb the damages due Ms. Skierski; the only disagreement is which one.

I do not disagree with my colleagues that the out-of-state cases they cite provide little guidance to the resolution of this issue for they are often the result of differing statutory language. *Niglio v. Omaha Property & Cas. Ins. Co.,* 679 *So.*2d 323 (Fla.Dist.Ct.App. 1996), *rev. denied,* 689 *So.*2d 1071 (1997), for instance, which denied coverage to a pedestrian injured in a drive-by shooting, involved a statutory requirement that there be physical contact between the pedestrian and the automobile. New Jersey has eliminated such a requirement. *Lindstrom v. Hanover Ins. Co.,* 138 *N.J.* 242, 248–49, 649 *A.*2d 1272 (1994). *Horney v. Tisyl Taxi Corp.,* 93 *A.D.*2d 291, 461 *N.Y.S.*2d 799 (1983), which denied coverage to a passenger assaulted by a taxi driver, involved a statute which called for coverage for injuries proximately caused by the operation of a vehicle.

Nor do I disagree with my colleagues that the proper test to determine whether Home State is obligated to afford coverage is whether there is a "substantial nexus between the injury and the use of the vehicle." *Westchester Fire Ins. Co. v. Continental Ins. Cos.,* 126 *N.J.Super.* 29, 38, 312 *A.*2d 664 (App.Div.1973), *aff'd o.b.* 65 *N.J.* 152, 319 *A.*2d 732 (1974). Under this test, it is not necessary that there be a direct causal link between the two for a substantial nexus to exist. *Ibid.*

We recognized in *Westchester* that "[w]hether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case." *Ibid.* The judgment whether there is a "requisite connection or degree of relationship" can only be made in terms of the description of the underlying incident that has been provided to us. I am satisfied that the connection which exists in this matter is too tenuous to justify imposing responsibility upon Home State.

My colleagues conclude that, as in *Lindstrom v. Hanover Ins. Co., supra,* the school bus "did more than provide a setting or an enhanced opportunity for the assault." 138 *N.J.* at 252, 649 *A.*2d

1272. In *Lindstrom*, the Court found a victim of a random drive-by shooting to be entitled to PIP benefits under his father's automobile policy. In reaching this conclusion the Court said that the assailant's automobile "furnished the assailant with what he must have assumed would be both anonymity and a means of escape. The assailant would not likely have committed such an act of apparently random violence without the use of a car." *Ibid.* There is no basis, however, for a similar assumption in this matter. It is purely fortuitous that this assault by one group of students upon a student from a neighboring town occurred within the confines of the school bus. Even the majority opinion in *Lindstrom*, moreover, recognized an analytical distinction between claims for PIP coverage, which it deemed "'a social necessity'" 138 *N.J.* at 247, 649 *A.*2d 1272 and claims for automobile liability coverage. 138 *N.J.* at 249, 649 *A.*2d 1272. My colleagues have ignored that distinction.

I cannot subscribe to my colleagues' view that the assault upon Ms. Skierski was "a foreseeable consequence of the 'use' and 'operation' of the school bus." (op. at 594, 713 *A.*2d at 562). I am unable to equate a dog's instinctual bite with a concerted physical attack by a number of teenagers upon another.

I am, finally, troubled by my colleagues' conclusion that one of the essential duties of a school bus driver is to supervise the conduct of the children who are on the bus. I agree that in certain instances a school bus company or school district may have a duty to provide supervision of the children who are riding on a school bus. Thus, if either Raphael or the school district were aware of the tensions which apparently existed between the students of South Amboy and Perth Amboy, a duty may well have existed either to place an aide on the bus to prevent disruptions or to construct a route which would avoid placing the students upon the same bus. A violation of any such duty by Raphael, however, would, in my opinion, clearly fall within the commercial general liability policy issued by Continental, not the business auto policy issued by Home State. The overarching duty of the driver,

however, is the safe operation of the vehicle. To impose a duty of supervision upon the driver is to invite distraction from the road and a consequent increased risk of vehicular accident. This poses a risk of harm not only to the occupants of the bus but to other drivers upon the road.

Because I view the assault upon Ms. Skierski as fundamentally unrelated to the "ownership, maintenance or use" of the school bus, I would impose responsibility for coverage upon Raphael's commercial general liability carrier, Continental.