Yvette Maria **RICHARDS, Individually and as Administratrix of the Estate of Robert Edward Richards II and Robert Edward Richards, Sr. on his own behalf, and Carla Phipps, Individually, and as parent and Legal Guardian of Kira Ashley Phipps, a minor, Plaintiffs,**

v.

The **PRINCETON INSURANCE COMPANY, Faith Temple New Hope Church, a/k/a/ Faith Temple New Hope Christian Church; and Faith Temple New Hope Christian School, Defendants.**

**No. 00 CIV. 7584(VM).**

United States District Court, S.D. New York.

Dec. 19, 2001.

Noah H. Kushlefsky, Kreindler & Kreindler, New York City, for plaintiffs.

David R. Cosgrove, Hurley & Vasios, Short Hills, NJ, for defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs Yvette Maria Richards, Robert Edward Richards, Sr. and Carla Phipps (hereinafter "Plaintiffs") brought this declaratory judgment action, invoking the

Court's diversity jurisdiction under 28 U.S.C. § 1332, against defendants The Princeton Insurance Company (hereinafter "Princeton"), Faith Temple New Hope Church a/k/a Faith Temple New Hope Christian Church, and Faith Temple New Hope School a/k/a Faith Temple New Hope Christian School (hereinafter collectively "Faith Temple"). Plaintiffs seek a declaration that: (1) New Jersey law applies to the underlying matter; (2) Faith Temple's Comprehensive General Liability Policy provides coverage for damages alleged by Plaintiffs in a separate action; and (3) attorney's fees are recoverable in this action. Defendants do not contest that New Jersey law applies to this action. For the reasons stated herein, Plaintiffs' motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiffs are residents of New York State; Princeton and Faith Temple (hereinafter collectively "Defendants") are New Jersey corporations. (Compl.¶¶ 6, 7.) The parties agree that on or about November 8, 1996, Princeton issued a Commercial General Liability Policy (hereinafter the "CGL Policy") to Faith Temple. (Compl. ¶ 27; Answer, Counterclaim and Cross-claim (hereinafter "Ansr."), at 4, ¶ 27.) The CGL Policy provides that Princeton "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." However, the Policy also contains an exclusion for:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

(Compl. ¶ 32; Ansr., at 6 ¶ 3 (hereinafter the "Automobile Exclusion").)

The parties do not dispute that on October 2, 1997, students and teachers from Faith Temple took a trip organized and arranged by Faith Temple. (Compl. ¶ 13; Ansr., at 3, ¶ 13.) Charles E. Thompson (hereinafter "Thompson"), an employee of Laidlaw Transit, Inc. and Laidlaw Transportation, Corp. (hereinafter "Laidlaw") operated the school bus that, under an agreement with Faith Temple for this purpose, transported the Faith Temple students and teachers to the Masker Fruit Farm in Warwick, New York. (Compl. ¶¶ 13, 14; Ansr., at 3, ¶¶ 13, 14.) Plaintiffs Yvette Richards, along with her son Robert Richards II, and Carla Phipps, along with her daughter Kira Ashley Phipps, were also visiting Masker Fruit Farm that day. (Compl. ¶¶ 16, 19; Ansr., at 3, ¶¶ 16, 19.)

According to Plaintiffs, Faith Temple permitted its students to enter their Laidlaw bus while it was unattended. Once inside, the students accidently disengaged the parking brake and caused the bus to roll down a hill, killing Robert Richards II and injuring Kira Ashley Phipps, Yvette Richards and Carla Phipps. (Compl.¶¶ 18, 19.) Defendants admit that Robert Richards II was killed and Kira Ashley Phipps was injured, but disclaim knowledge as to the cause of the accident itself. (Ansr., at 3, ¶¶ 16–18.)

In 1998, Plaintiffs brought two lawsuits in the Supreme Court of the State of New York, Bronx County, each against Laidlaw, Thompson (an owner and operator of the bus at issue), Navistar International (the manufacturer of the bus), and Masker Fruit Farm. In 1999, the Plaintiffs amended their complaints to add Faith Temple as defendants to those lawsuits. (Compl. ¶¶ 22–24; Ansr., ¶¶ 22–24.) The lawsuits were consolidated, (Compl.¶ 26), and the

consolidated action appears to be pending (hereinafter, the "State Action").

In the State Action, it appears that Plaintiffs claim that a proximate cause of Plaintiffs' injuries and Robert Richards II's death was Faith Temple's conduct in

negligently, carelessly and recklessly supervising the Faith Temple students who were alone on the subject bus when the parking brake was released; in permitting the four students to board the bus when no driver or other adult was present; in failing to properly monitor and control the four boys who entered the bus; and failing to keep a proper lookout over the children from its school; in failing to instruct its students not to board a school bus unsupervised; and defendant Faith Temple was otherwise negligent.

(Compl. ¶ 25); Ansr., at 7–8, ¶ 9 (hereinafter the "Failure to Supervise Claim".)

The action before this Court is based on Plaintiffs' assertion that the CGL Policy covers the Failure to Supervise Claim and Princeton's assertion that it does not. Specifically, Plaintiffs allege that, based on the Automobile Exclusion, Princeton wrongfully disclaimed coverage for the claims made by Plaintiffs in the State Action. (Compl. ¶¶ 31–35.) Consequently, Plaintiffs filed this action for a declaratory judgment and attorneys' fees. In response, Defendants answered and filed a counterclaim and crossclaim seeking a declaratory judgment that the CGL Policy does not afford coverage to Faith Temple for the claims alleged in the State Action,

that Princeton has no duty to defend Faith Temple in the State Action, and that Princeton has no duty to satisfy any judgment that might ultimately be obtained by Plaintiffs against Faith Temple in the State Action. Plaintiffs then moved for summary judgment. In that connection, neither party has submitted affidavits in support of their arguments.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■ Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate an absence of any genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To be considered on a motion for summary judgment, evidentiary submissions (i.e. an affidavit) must be made in a form that would be admissible at trial. See Fed.R.Civ.P. 56(e); DeCintio v. Westchester County Medical Center, 821 F.2d 111, 114 (2d Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987).[1]

To support a granting of the motion, the Court must determine from the record before it that a reasonable trier of fact would not be able to find in favor of the non-mover. See Brady v. Colchester, 863 F.2d 205, 211 (2d Cir.1988). In considering the motion, the evidence is viewed in

---

1. Nonetheless, failure to present evidence in a form admissible at trial is a technical defect, and, as such, any objection to the form of a submission is waived if the opposing party fails to bring a timely motion to strike the defective affidavit or other evidentiary submission. See DeCintio, 821 F.2d at 114; see also In re Teltronics Services, Inc., 762 F.2d 185, 192 (2d Cir.1985). Here, Princeton raises no objection to the form of Plaintiffs' evidentiary submissions, and thus, the Court may consider Plaintiffs' unsworn and uncertified attachments to the Memorandum of Law in Support of Plaintiffs' Motion to Apply New Jersey Law and for Summary Judgment and Attorneys Fees and Costs, dated March 20, 2001 (hereinafter "Plfs. Memorandum").

the light most favorable to the non-moving party, and reasonable inferences and factual conflicts are resolved in his favor. *See Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). A declaratory judgment regarding insurance policy limits and coverage may be granted on a motion for summary judgment. *See, e.g., National Union Fire Insurance Company of Pittsburgh v. The Stroh Companies,* 265 F.3d 97 (2d Cir.2001).

## B. *CHOICE OF LAW*

In a diversity action under 28 U.S.C. § 1332, a federal court "must apply the choice of law rules of the forum state, here New York, to determine which state's substantive law applies." *Schwimmer v. Allstate Ins. Co.,* 176 F.3d 648, 650 (2d Cir. 1999) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie v. Tompkins,* 304 U.S. 64, 74–77, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1538 (2d Cir.), *cert. denied,* 522 U.S. 864, 118 S.Ct. 169, 139 L.Ed.2d 112 (1997)).

 Under New York law, a court must apply the "law of the place which has the most significant contacts to the matter in dispute", which, in an insurance policy case, may be discerned by the "grouping of contracts test." *In the Matter of Allstate Insurance Company,* 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936, 939–41 (1993). The grouping of contracts test requires the court to consider: "the place of contracting, negotiation and performance, the location of the subject matter of the contract; and the domicile of the contracting parties." *Id.* at 940 (citations omitted).

 Here, it is not contested that the CGL Policy was made in New Jersey, the claims and payments due under the CGL Policy would be made in New Jersey, the subject matter of the CGL Policy—the Faith Temple Premises—is located in East Orange, New Jersey, and the parties are domiciled in New Jersey. Furthermore, Defendants do not challenge this portion of Plaintiffs' motion. Accordingly, the Court grants Plaintiffs' motion for a declaration that New Jersey law applies to this action.

## C. *REQUEST FOR DECLARATORY RELIEF*

Under New Jersey law, any person "whose rights, status or other legal relations are affected by a … contract … may have determined any question of construction or validity arising under the instrument … [or] contract … and obtain a declaration of rights, status or other legal relations thereunder." N.J. Stat. § 2A:16–53 (2001); *see, e.g., Stafford v. T.H.E. Insurance Co.,* 309 N.J.Super. 97, 706 A.2d 785, 787 (1998). Here, Plaintiffs seek a declaration of rights under the CGL Policy, which allegedly would affect Plaintiffs' legal status and relations concerning the State Action. Defendants do not challenge Plaintiffs' standing. Accordingly, the Court finds that Plaintiffs have standing under New Jersey law to bring an action for declaratory relief as third party beneficiaries under the CGL Policy.

## D. *APPLICABILITY OF FAITH TEMPLE'S COMPREHENSIVE GENERAL LIABILITY CLAIM*

### 1. *General Principles of Insurance Policy Interpretation*

 Under New Jersey law, insurance contracts are treated as contracts of adhesion because "insurance companies possess all the expertise and unilaterally prepare the varied and complex insurance policies." *Meier v. New Jersey Life Insurance Co.,* 101 N.J. 597, 503 A.2d 862, 869 (1986). Thus, insurance policy exclu-

sions must be narrowly construed and the burden is on the insurer to bring the case within the exclusion. *See American Motorists Insurance Company v. L–C–A Sales Co.*, 155 N.J. 29, 713 A.2d 1007, 1013 (1998) (internal quotations and citations omitted).

Likewise, under the doctrine of reasonable expectations of the average insurer, ambiguities in the policy terms must be construed in favor of the insured's objectively reasonable expectations. *See Meier*, 503 A.2d at 870–71. A genuine ambiguity warranting application of the doctrine arises only where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. *See Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 795 (1979). In such a case, "application of the test of objectively reasonable expectation of the insured often will result in benefits of coverage never intended from the insurer's point of view.... [T]he doctrine of ambiguity works to effectuate the consumer's expectation that the policy purchased extended greater coverage in the particular underwriting area." *Id.*

Nevertheless, the doctrine of ambiguity does *not* mean that "any far fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage." *Cobra Products Inc. v. Federal Insurance Co.*, 317 N.J.Super. 392, 722 A.2d 545, 549 (1998). Accordingly, where the language of an insurance policy is clear, a court must enforce its terms as written. *See Conduit Foundation Corp. v. Hartford Casualty Insurance Co.*, 329 N.J.Super. 91, 746 A.2d 1053, 1058 (2000). Likewise, courts should not write for the insured a better policy of insurance than the one purchased. *See Voorhees v. Preferred Mutual Insurance Co.*, 128 N.J. 165, 607 A.2d 1255, 1260 (1992).

### 2. *Applicability of the Automobile Exclusion*

The Automobile Exclusion's terms exclude from coverage under the CGL Policy purchased by Faith Temple those claims of " 'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any ... auto ... owned or operated by or rented or loaned to [Faith Temple]." (Automobile Exclusion.) Defendants assert that the according to its plain language, the Automobile Exclusion applies to Plaintiffs' claims in the State Action. Plaintiffs argue that the Failure to Supervise Claim does not arise out of the ownership, maintenance, use or entrustment of the Laidlaw bus. Plaintiffs further argue that the Automobile Exclusion cannot apply because Faith Temple chartered the Laidlaw bus and therefore did not own, operate, rent or obtain the bus via loan.

### a. *"Arising out of the ownership, maintenance, use or entrustment to others"*

Plaintiffs attempt to show that the theory they assert in the State Action, the Failure to Supervise Claim, refers to a separate and distinct cause of Plaintiffs' injuries and death than any conduct arising out of Faith Temple's ownership, maintenance, use or entrustment to others of the bus in question. The Court is not persuaded. Plaintiffs' argument would require an analytical stretch that strains the common sense meaning of common words and thus tears at the fabric of law.

As a question of New Jersey law, Plaintiffs request that the Court disregard the well established interpretation of the meaning of "arising out of" in insurance policies. *See Westchester Fire Insurance Co. v. Continental Insurance Co.*, 126 N.J.Super. 29, 312 A.2d 664 (1973); *see*

*also Owens v. Prudential Property and Casualty Insurance Co.,* 336 N.J.Super. 79, 763 A.2d 792 (2000); *Home State Insurance Company v. Continental Insurance Co.,* 313 N.J.Super. 584, 713 A.2d 557, 559–60, 562 (1998); *Daus v. Travelers Insurance,* 270 N.J.Super. 241, 636 A.2d 1091 (1994); *Allstate Insurance Company v. Moraca,* 244 N.J.Super. 5, 581 A.2d 510 (1990); *Scarfi v. Aetna Casualty & Surety Co.,* 233 N.J.Super. 509, 559 A.2d 459, 462–63 (1989). The term "arising out of" is to be interpreted "in a broad and comprehensive sense to mean 'originating from' or 'growing out of' the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle for the obligation of coverage to arise." *Westchester,* 312 A.2d at 669. In *Westchester,* the court was faced with the question of whether a comprehensive general liability policy or an automobile insurance policy covered an accident that occurred when a child, passenger in his friend's car, threw a stick out of a window and injured a cyclist.[2] *See id.* at 664. In that situation, the automobile policy applied rather than the comprehensive general liability policy because, as the New Jersey court reasoned "[h]owever antisocial such conduct may be, everyday experience tells us that various objects are thrown or permitted to fall from moving vehicles. Common examples are lighted cigarettes and cigars, food and drink containers, and other debris." *Id.* at 669. Thus, the Court is to construe the words

"arising out of" broadly and within the context of everyday experience.

Plaintiffs rely on one isolated case that held that where there are two concurrent proximate causes of an accident, one of which would be covered by the insurance policy and the other would be excluded from coverage, the insurer will be held to its duty to defend an action based on the accident. *See The Salem Group v. Oliver,* 128 N.J. 1, 607 A.2d 138, 139–40 (1992). In *Salem Group,* an uncle provided alcohol to a minor and also permitted the minor to drive an all-terrain vehicle. The minor had an accident and a third party filed suit against the uncle alleging social host liability for supplying alcohol to the minor. The uncle's insurance policy declined to defend him on the grounds of an automobile exclusion term in its policy. The uncle successfully challenged the insurance company's decision. Affirming a ruling of the New Jersey Superior Court, Appellate Division, *The Salem Group v. Oliver,* 248 N.J.Super. 265, 590 A.2d 1194, 1195–97 (1991), the New Jersey Supreme Court reasoned that an insurer cannot avoid its obligation to defend the insured simply because the operation of the all-terrain vehicle constituted an additional cause of the injury. *See id.,* 607 A.2d at 139.

Here, Plaintiffs attempt to show that the bus accident was a separate, additional cause of Plaintiffs' injuries and death. Plaintiffs argue that "[t]he accidental release of the brake is the antithesis of 'use' " because, it appears, that Faith Tem-

---

**2.** Typically, an insured purchases an automobile insurance policy to cover only those risks associated with the use or ownership of a motor vehicle. A comprehensive general liability policy, on the other hand, often is purchased to cover risks arising out of the use or possession of a site, be it a workplace or home. At times the coverage may appear to overlap, and a court may be called upon to determine which policy applies. Plaintiffs try

to distinguish case law following *Westchester* on the grounds that in the case at bar, apparently, Faith Temple purchased no automobile insurance. Thus, the Court is not called upon to allocate between insurers, but to determine whether coverage exists at all. In the absence of New Jersey law according legal significance to that distinction, this Court is not persuaded by Plaintiff's argument.

ple did not direct the children to drive the bus and were not otherwise overseeing the children's cavorting on the bus. (Plfs. Memorandum, at 13–14.) This theory, in part, is based on Plaintiffs' argument that the definition of "use" is limited to the intentional operation of an automobile that occurs only when the engine is running. According to Plaintiffs, accidental or negligent acts cannot constitute use, and thus, the accident could not arise out of Faith Temple's use of the bus. This contention, reflecting a potentially limitless argument, is unconvincing as a matter of New Jersey law and practical experience.

Rather, the Court finds that under New Jersey law there was a substantial nexus between the Faith Temple's use of the bus in question and Plaintiffs' injuries and death. Specifically, the record indicates that Faith Temple hired the bus and driver for use on a field trip. The bus was a necessary element of the school trip, without which Faith Temple would have been unable to travel from East Orange, New Jersey, to Masker Fruit Farm in Warwick, New York. That use presumably began at the commencement of the trip, when the bus was available and accessible to Faith Temple, and remained continuous for so long as Faith Temple, under the terms of the rental, had some measure of dominion or control over the availability of the vehicle for the purpose covered by the agreement. That the bus was not in operation transporting passengers on the road, but rather was parked following the first part of the trip, did not render it less subject to the Faith Temple's use. In fact, Faith Temple availed itself of the bus's travel *and* stationary storage capacity by permitting children to return to, and wait inside, the bus. Access to the bus merely for the purpose of waiting in it for any legitimate reason would constitute as much "use" of the vehicle as actual conveyance of passengers and goods from one point to another.

On the bus, as Plaintiffs allege, the children presumably disengaged the parking brake and the bus rolled down the hill to cause the injuries Plaintiffs assert. That the children did not wait on the bus in an orderly manner is to be expected; it is common experience that children often act rambunctiously on school buses. *See Home State Insurance Company v. Continental Insurance Co.*, 313 N.J.Super. 584, 713 A.2d 557 (1998) (holding that automobile exclusion clause applied to bar coverage under comprehensive general liability policy for injuries suffered during a fight on school bus even though plaintiff pursued the case on a theory of failure to supervise). Accordingly, the Court concludes that Faith Temple's use of Laidlaw's bus pursuant to their rental agreement, and Faith Temple's supervision of children during the school trip, are inseparably intertwined, so that Plaintiffs' injuries and death here asserted undoubtedly arose out of Faith Temple's use of the bus during the school trip on October 2, 1997.

b. *"Owned, operated by or rented or loaned"*

There is no contention here that Faith Temple either owned, operated or obtained the bus in question by a loan. The sole question the parties dispute is whether Faith Temple rented the bus in question. Plaintiffs claim that the relationship between Faith Temple and Laidlaw or Thompson was governed by a "charter" arrangement and, as such, was not covered by the CGL Policy's Automobile Exclusion clause. Defendants contend that Faith Temple rented the bus and that any distinction between a charter and rental is a "distinction without a difference." The Court finds Plaintiff's argument unconvincing.

Under a typical charter transaction a party hires a vehicle along with a crew or

driver. Why exactly the hiring of a crew in addition to the hiring of a vehicle brings the chartered vehicle outside the definition of rental is not explained by Plaintiffs' arguments. Thus, as an initial matter, Plaintiffs fail to present persuasive reasoning for their position.

Furthermore, even if valid grounds for such a legal distinction existed, Plaintiffs do not submit any compelling evidence to show that Faith Temple and Laidlaw entered a "charter" agreement as something the parties contemplated to be legally different from rental of a bus along with a driver. For instance, Plaintiffs did not introduce a copy of the contract setting forth the alleged charter agreement defining the basis for the legal consequences Plaintiffs claim differentiate Faith Temple's contract from an ordinary rental. This argument, therefore, appears objectively and subjectively unreasonable.

Finally, Plaintiffs' strenuous arguments that there is a difference between rental transactions and charter transactions do not create a genuine ambiguity warranting application of the doctrine of reasonable expectations of the average insurer. Even if the Court were to act on the Plaintiffs' behalf to create an ambiguity based on the parties' present conflict, application of the doctrine would not aid Plaintiffs. Etymologically and legally, average persons commonly understand that a charter is a synonym for, or at minimum a subset of, a rental, with the only difference being that a charter connotes some exclusivity of purpose to the rental. *See* Merriam–Webster's College Dictionary 549 (Frederick C. Mish et. al. eds. 1999) ("SYN: HIRE, LET, LEASE, RENT, CHARTER mean to engage or grant for use at a price.... CHARTER applies to the hiring or letting of a vehicle usu. for exclusive use <charter the bus to go to the game>."); *see also* Black's Law Dictionary 235 (6th ed. 1990) ("Charter *v.* To hire, rent or lease for a temporary use; *e.g.* to hire or lease a vessel for a voyage."). Thus, it would be inappropriate for this Court to hold that, by artificially labeling the hiring of a bus and driver as a "charter" rather than a "rental," the objectively reasonable expectation of the insured would preclude application of the Automobile Exclusion and thereby extend coverage into the distinct area of automobile policy underwriting. For these reasons, Plaintiffs' arguments must fail.

Accordingly, Plaintiffs may not look to Princeton Insurance for compensation under Faith Temple's CGL Policy.

### E. *ATTORNEY'S FEES*

Plaintiffs also seek a declaration that attorney's fees for the costs of bringing this motion are recoverable under New Jersey law should Plaintiffs ultimately prevail in the State Action. In light of the foregoing decision, and that at this stage there is no indication that Plaintiffs will ultimately prevail on the issue of liability, the Court denies Plaintiffs' request for a declaration on the issue of attorney's fees as academic and premature.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' motion for a declaration that New Jersey law applies is GRANTED; and it is further

**ORDERED** that Plaintiffs' motion for a declaration that Faith Temple's CGL Policy provides coverage for the Failure to Supervise Claim asserted in the State Action is DENIED; and it is further

**ORDERED** that Plaintiffs' motion for a declaration that attorney's fees are recoverable by Plaintiffs is DENIED; and it is finally

ORDERED that the Clerk of Court is directed to close this case.

**SO ORDERED.**